## Siegel *versus* Chidsey.

Where money was obtained on the personal credit of a member of the firm, and the money went into the firm and was used for its exclusive benefit, though this would not make the firm liable to the creditor, yet it would be a good consideration, to support the subsequent promise of the firm to pay the debt.

If the partners confess judgment to the creditor for such debt, it is not the application of the partnership effects to the private debt of a member of the firm, but the honest assumption by both partners of a debt created for their joint benefit, and which in equity and conscience both were equally bound to pay.

Such a transaction is not fraudulent as to the partners, because both assent to it: and not as to the creditors of the firm, because they have no lien on the partnership effects, and their available equities must be worked out through the partners themselves.

If as between the partners there was no equity to forbid the assumption of the debt, the creditors of the firm could have none; for if it was not a fraud on the firm, it was not on the creditors of the firm.

Simple insolvency does not work a dissolution of the partnership, nor divest the partners of their dominion over the partnership property.

The confession of a judgment to a *bona fide* creditor, even though it have the effect of giving him a preference over other creditors, is not a fraudulent disposition of an insolvent estate.

ERROR to the Common Pleas of *Northampton county.*

[Siegel *v.* Chidsey.]

This was a feigned issue to determine the right to the proceeds of the personal property of Field & Siegel. George Field was engaged in the mercantile business, in the borough of Easton, and had a considerable stock of goods, and had incurred debts and liabilities in the prosecution of his business. On the 1st September, 1847, Field and John Siegel, Jr., entered into partnership in the store, and with the stock of goods which Field then had on hands. John Siegel, Sr., loaned to his son, John Siegel, Jr., the sum of $2200, and took from him a single bill for the amount, dated 31st August, 1847. This money went into the firm, was used in paying debts then existing, and in purchasing other goods for the use of the firm. On the 23d March, 1852, this single bill of John Siegel, Jr., was taken up, and the two partners on that day gave their single bill in its stead, with warrant of attorney to confess judgment for $2274.23. In March, 1853, the firm of Field & Siegel failed. Judgment was entered on the single bill in favour of John Siegel, Sr., and an execution issued upon it. Russel S. Chidsey was also a creditor of the firm, and obtained judgment against it, and issued an execution, which came to the sheriff's hands subsequent to that of John Siegel, Sr.

The property of the firm was sold under these and prior executions, and the proceeds not being sufficient to satisfy both Siegel and Chidsey's executions, the latter claimed to have preference on the ground that the claim of Siegel was not a debt of the firm, but the private debt of John Siegel, Jr., one of the partners, and that the giving of the firm note for it was in fraud of the firm's creditors.

The money having been brought into court for distribution, this feigned issue was framed to try the validity of the judgment of John Siegel, Sr., against Field & Siegel. On the trial in the court below, George Field, one of the partners, was called as a witness, and deposed that the money loaned to John Siegel, Jr., by his father, went into the firm, and was used for partnership purposes, and that the note of the 23d March, 1852, was given for the debt, at which time also the previous note given by John Siegel, Jr., for the money, was given up. He further stated that it had always been regarded and treated as a firm debt, and the interest had been paid on it by the firm out of the partnership funds.

The plaintiff Chidsey proved that, at the time Field & Siegel gave him the note upon which his judgment was entered, they agreed that in the event of their failure, no judgment and execution should be allowed to precede his, and alleged that notice of that fact was communicated to the elder Siegel, or his attorney, when his note was given, and before his execution was issued, and that he would, in consequence, be postponed to Chidsey's claim.

[Siegel *v.* Chidsey.]

The parties respectively presented the following points, and prayed the instruction of the court to the jury upon them.

Plaintiff's points.—1. If the jury are satisfied that the judgment of John Siegel, Sr., is for an individual debt of his son, John Siegel, Jr., the execution on it will be postponed to that upon the execution of Russel S. Chidsey, for a firm debt as to partnership property levied under both executions and sold thereunder.

2. If at the time of the giving this judgment note to John Siegel, Sr., by Field & Siegel, that firm was insolvent, and the consideration of the note was an individual debt due by John Siegel alone, such judgment is fraudulent and void, as to partnership creditors who may levy and sell partnership property, and will be postponed to such partnership creditors, even though the execution of the said John Siegel, Sr., was first issued and levied.

3. If at the time this judgment bond was given to Russel S. Chidsey, Field & Siegel agreed with him that it should come in first in case of failure, and that no judgment or execution should be allowed to precede it, and if that fact was known to, or communicated to, John Siegel, Sr., his attorney or his agent, when the judgment note was given to him, the execution issued thereon must be postponed to the execution issued upon Chidsey's judgment.

4. If the jury believe that the person who received John Siegel, Sr.'s judgment bond from Field & Siegel, derived his authority from them, and not from John Siegel, Sr., and was without instruction or sanction from John Siegel, Sr., until Chidsey's judgment was entered and execution issued, and that Field & Siegel had agreed with Chidsey, that no judgment or execution should precede his, then the entry and execution on John Siegel's judgment was a fraud on Chidsey, and renders it void as to him.

5. If the jury believe that John Siegel, Sr., the defendant here, had no knowledge of this judgment to him at the time of its entry, and did not direct the execution to be issued, it must be postponed to Chidsey's execution.

6. If the jury believe that the object of giving this judgment to John Siegel, Sr., was to hinder, delay, or defeat the collection of the claims of the partnership creditors, or any of them, it is fraudulent and void against such partnership creditors, and especially against any who issued execution, and levied on the partnership property before the sale thereof.

7. If the jury believe that the debt due John Siegel, Sr., was for money loaned his son, to invest in the firm as his share of capital, it was a debt of John Siegel, Jr., alone, and not of George Field, or of Field & Siegel; and if George Field, being in a state of embarrassment and insolvency joined in confessing a judgment

[Siegel *v.* Chidsey.]

therefor, said judgment against him would be a voluntary and fraudulent judgment as respects his creditors, or the creditors of the firm, and consequently void and fraudulent altogether as against such creditors.

Defendant's points.—1. That if money was advanced by John Siegel, Sr., to John Siegel, Jr., for the purpose of the partnership, and that money was received and used by the partnership, for partnership purposes, they (the firm) had a right, both in law and equity, to give their joint obligation for it, and that obligation would bind the firm.

2. That if one of a firm borrows money on his separate obligation for the purposes of the firm, and the firm receive and use the money, they may both in law and equity adopt it as the joint debt of the firm.

3. That payment of interest by a firm on a debt contracted by one of the partners for its benefit, constitutes the debt a joint debt.

4. That a judgment confessed to secure one who is *bona fide* bound as surety, is not fraudulent.

5. That it is not fraudulent for a firm to prefer one creditor to another.

The court below (McCARTNEY, P. J.), after adverting to the facts, charged as follows:—

"To postpone this judgment, two facts must exist: 1st. That the firm was insolvent. 2d. That the debt for which the judgment was confessed was not a firm debt. Before leaving these two questions to you under the evidence, and as preparatory thereto, we will dispose of the points of law submitted, as well on the part of the plaintiff as on that of the defendant.

"We answer the plaintiff's third point in the negative; John Siegel, Sr., is not to be affected by any agreement between Chidsey and Field & Siegel. His judgment and execution are independent of that agreement. Notice to a judgment-creditor of such an agreement is immaterial.

"We answer the plaintiff's fourth point in the negative, upon authority of Lowrey *v.* Coulter, 9 *Barr* 351. The agreement with Chidsey was at most but an agreement that he should have a preference, and if the firm afterwards gave a preference to Siegel, Sr., the latter will be entitled to his advantage. An executory contract binds the parties but not their persons, unless an interest vests under the contract.

"We answer the plaintiff's fifth point in the negative, for the same reason given for the negative of the fourth point. Ch. J. GIBSON, in Lowrey *v.* Coulter, says that the statute of 13 Eliz. does not extend to preferences by judgment and execution, which is only a mode of payment. If a judgment and execution be only a mode of payment, the debtor may enter the judgment and issue

[Siegel v. Chidsey.]

the execution without the knowledge of the creditor.    True it is that in Lowrey v. Coulter, 9 *Barr* 349, it is stated that there was a written direction for an execution from the plaintiff in the judgment.    But the chief justice, in his opinion, does not advert to that circumstance, nor does it appear to have modified the decision.

"We answer the plaintiff's sixth point in the affirmative, with the limitation that both Field & Siegel of the one part, and John Siegel, Sr., of the other part, must have concurred in the intention to delay and defraud the firm creditors.    If John Siegel, Sr., had a just debt against the firm, the intention of Field & Siegel alone, to delay creditors, is immaterial.    If he participated in such intention, it avoids his judgment, even though there were a just debt due him from the firm.    A creditor may get what he honestly can, but he must not aid his debtor to defraud or delay other creditors: Hean v. Montfair, 1 *Harris*.

"We affirm the first, second, and seventh points of plaintiff. The second point is the main one, and the facts therein hypothetically stated are the facts for the jury to determine.    The facts hypothetically stated in the first branch of the seventh point, are, if believed, evidence that the debt was not a firm debt.

"The defendant's fourth point is affirmed.    It refers, we presume, to the evidence that John Siegel, Sr., was surety for the money borrowed in 1847 from Wm. Coleman and others.

"The defendant's fifth point is affirmed.    The defendant's third point is answered, by saying that the payment of interest by a firm, on a debt contracted by one of the partners for its benefit, is *evidence* that it was a firm debt, but such payment does not in point of law *constitute* it a joint debt.    The jury will say what effect the payment of interest is to have towards satisfying them that the debt was a firm debt.

"The defendant's first point is affirmed, subject to the limitation that the money was advanced to the partnership, and was not a part of the capital stock put in by John Siegel, Jr.    The firm is debtor to the partner who puts in the capital, but is not, by force of receiving the money, debtor to him from whom the partner procured the money.    In brief, money put into a partnership may be put there for one of two purposes.    1st. To serve as capital stock of the partner who puts it in.    2d. For the purpose of carrying on the common business of the partnership, and creating a fund on the credit of the firm, over and above the fund created by the separate capitals of the partners.    The first point of defendant is valid for money advanced for the second of these purposes. But as to money advanced for the first of these purposes by Siegel, Jr., his partner, Field, has in equity a right to have the firm assets applied to the firm debts before withdrawing the capital in any form from the firm; of this equity, the creditors of the firm can avail themselves.    They can say 'it is more to the benefit of

[Siegel *v.* Chidsey.]

Field to pay the firm debts, than to return to Siegel, Jr., his capital, whether that return be made in the form of a judgment to Siegel, Sr., or otherwise.' Firm creditors themselves having no equities may nevertheless seize upon those of a partner, and that without his consent.

"The defendant's second point is answered as the first. To which we add, that if a partner borrow money and give his own note for it, it does not become a partnership debt by being applied to partnership purposes: Graeff *v.* Hutchinson, 5 *Watts* 454.

"If the money for which the obligation of John Siegel, Jr., was given in 1847, was for the general purposes of the firm, as contradistinguished from his capital stock, it may be made a firm debt, and placed on the footing of other firm debts. If the money was for the capital stock of Siegel, Jr., it may be also adopted as a firm debt. The firm may bind itself to pay the debts of a partner, subject, nevertheless, to the right of the firm creditors to seize upon the equities of the other partner, as mentioned in the answer to defendant's first point.

"Having disposed of these points of law in their relationship to the present case, we recall the attention of the jury to the two questions that we stated above. What is the evidence that the firm was insolvent? What is the evidence that this judgment to Siegel, Sr., was given for a firm debt? (His Honour here referred to the testimony of Field, Durling, Coleman, &c.)

"If the jury believe that the firm was insolvent, and the debt not a firm debt, verdict for plaintiff—otherwise, for defendant."

The jury found for the plaintiff.

The defendant Siegel sued out this writ, and assigned for error, *inter alia*, the foregoing answers to the points of the parties.

*Brown* and *Ihrie*, for plaintiff in error.—The court in substance affirm the proposition that if the firm was insolvent when this judgment note was given, it was fraudulent and void as to the firm creditors. In this we contend there was error. Even though it was a debt of Siegel, the firm had the right to assume it and make it a joint debt: *Colly. on Part.* 902–904; Green *v.* Tanner, 8 *Mass.* 411; Smith's Appeal, 2 *Barr* 258; *Carey on Part.* 222–225. The equity of the creditors of the firm can only be worked out through the partners and with their assent: *Story on Part.* 360; Baker's Appeal, 9 *Harris* 75; Snodgrass's Appeal, 1 *Id.* 470; Doner *v.* Stauffer, 1 *P. R.* 205.

*Green*, for defendant in error.—Was the ruling of the court below, that if the firm was insolvent when the judgment was confessed, and the debt was not a firm debt, it was void as to partnership creditors, erroneous? The facts showed utter bankruptcy,

[Siegel v. Chidsey.]

and that this was the debt of one of the partners. In Heckert v. Fegely, 6 W. & S. 144, it is ruled if one borrow money to put in the firm as his proportion of the capital, the firm is not liable for the debt, though the partner afterwards give the firm note for it: Colly. on Part. 266, 289, 301, 281.

Judgments may be fraudulent as to some creditors, and good as to others: Tomb's Appeal, 9 Barr 61. The joint effects belong to the firm and not to the partners; the partners are only entitled to share what may remain after paying the firm debts: Doner v. Stauffer, 1 P. R. 198. And the firm may recover back its assets applied by a partner to his own debt, whether he acted in bad faith or not: Purdy v. Powers, 6 Barr 492. The firm debts must be first paid before a partner can apply any of the assets to his own use: Pierce v. Jackson, 6 Mass. 242; Adams v. Pimp, 7 Pick. 542; Wilson v. Cameron, 2 Johns. 280. The partners have in equity a general lien, and are entitled to preference: White v. Dougherty, Man. & Yer. 309. And on failure, the application of the joint effects to the individual debt of a partner is fraudulent and void: Yale v. Yale, 13 Conn. R. 185. It is not liable for a private debt until all the firm debts are paid: Muir v. Leech, 7 Barb. S. C. 341. And a sale for the debt of a partner, although the money for which the debt was contracted was used as a part of the capital of the firm, is void against the creditors of the firm: Fernon v. Monroe, 1 Foster 462–93; 13 U. S. Dig. 515, pl. 59; Buchan v. Sumner, 2 Barb. S. C. 165; 20 Maine Rep. 89; 1 Par. on Con. 174, note. The principles quoted from Snodgrass's Appeal, 1 Harris 470, and Baker's Appeal, 9 Harris 76, do not apply to a case where, as here, the firm is insolvent: Brutus v. Tisdale, 4 Barb. S. C. 571; Barns v. Mason, 11 Miss. 469; Harris v. Lindsey, 4 W. C. C. R. 271; 12 N. H. Rep. 458; 1 Gallis C. C. R. 376; Anderson v. Maltby, 2 Ves. Jr. 255; Collins v. Hood, 4 McLean 186; 2 R. I. 298; McCarty v. Emlen, 2 Yeates 192.

The opinion of the court was delivered by

WOODWARD, J.—Unquestionably the debt of John Siegel, Jr., to his father John Siegel, Sr., was originally an individual and not a partnership debt. The paper taken for it proves it such, and the verdict has fixed it as the debt of one partner. But it is equally clear that the money, though obtained on the personal credit of Siegel, Jr., went into the partnership funds, and was used for the exclusive benefit of the firm of Field & Siegel. Now although this circumstance would not, of itself, make the firm liable to the creditor, 5 Watts 454, 6 Harris 412, yet it would be a consideration to support the firm's subsequent promise to pay. The single bill of 23d March, 1852, was such a promise. It was an express undertaking on the part of the firm, upon a sufficient consideration, to pay this debt out of the partnership assets. It

became at that moment a partnership debt for all intents and purposes.

This was not the application of partnership effects to the private debt of one member of the firm, but it was the honest and fair assumption by both members of the firm of a debt which had been created for their benefit, and which in equity and conscience they were both equally bound to pay. Field swore that the money had always been treated as a partnership debt—that the interest was paid out of the drawer of Field & Siegel, and that *we* gave the note of March, 1852, for that of August, 1847. The creditor advanced his money for the purposes of the firm—it went to their use, it was represented in the effects which they possessed, and both members of the firm, with a full knowledge of the facts, concurred in giving it the form of a partnership debt.

It is impossible to think of such a transaction as fraudulent. Fraudulent as to whom? Not as to Field, because he assented to all that was done, and all the authorities agree that where a creditor receives partnership paper from one partner in discharge of his separate debt, he will repel the presumption of fraud by showing that it was given with the consent of the other partners. See *Story on Part.* 202, and the cases cited in notes.

Nor could it be a fraud on partnership creditors, for they have no lien on partnership effects, and whatever equities are available to them must be worked out through the partners. We held in Baker's Appeal, 9 *Harris* 82, that the right to confine a partner, or those who claim under him, to his interest in the surplus after payment of the partnership debts, is an equity which rests in the other partners alone, and not in the creditors of the firm, and therefore, that where one partner sells his interest in the firm to another partner, upon an express engagement of the latter to pay the partnership debts, he may make a different disposition of the assets, and leave the creditors only his personal responsibility. This is a much stricter rule, as to the equities of partnership creditors, than any that we have occasion to invoke in this case.

If as between the partners there was no equity to forbid the assumption of Siegel's debt, the creditors of the partnership could have none. If it was not a fraud on the firm, it was not a fraud against the creditors of the firm. But that it was not a fraud on the firm, I have shown already, for both members assented to the assumption. And what possible equities can partnership creditors be thought to possess which do not belong equally to old Mr. Siegel? True, he advanced his money to his son, but it was for the partnership. It entered into the business of the firm, and purchased just as large a portion of the assets as he now claims to take out of the firm. What more did the money of any other creditor do? As partnership property has been acquired by means of partnership debts, it ought first to be applied to the discharge

[Siegel v. Chidsey.]

of them. This is the ground on which text writers rest the primary claims of joint creditors, and it is evident that Siegel is as clearly on this ground as Chidsey. If not a joint creditor at first he was only not so in form, and equity regards substance rather than form; but he became a joint creditor in form as well as substance before distribution commenced or any counter legal rights had vested. He stands, therefore, a partnership creditor among partnership creditors.

But it is objected that he was made so—that his claim was assumed by the firm after they were insolvent. The point put to and affirmed by the court, was that "if at the time of the giving this judgment-note to John Siegel, Sr., by Field & Siegel, the firm was insolvent, &c." Now the jury could not fail to understand, from the affirmance of this point, that if Field & Siegel were unable to pay all their debts, they had no right to assume the debt to Siegel, Sr. Is this law?

Under the statutes of bankruptcy the judicial declaration of the fact relates back to the first act of bankruptcy, so that from that period the bankrupt is deemed divested of all of his property and effects, and, by operation of law, as soon as assignees are appointed, it is vested in them by relation from the same period. It is clear that after an act of bankruptcy, partners could not pledge their effects to the payment of a debt of one of their number; but it was not made a point in this case, nor found by the jury, that any act of bankruptcy had been committed before the 23d March, 1852. Simple insolvency, however, without stoppage of payment, without an assignment, or any judicial process, does not work a dissolution of the partnership nor divest the partners of their dominion over the partnership property. They may not make a fraudulent disposition of it, but the confession of judgment to a *bona fide* creditor, even though it have the effect of giving him a preference over other creditors, is not a fraudulent disposition of an insolvent estate. It would not be questioned that an insolvent firm might make a valid sale of goods, or pay a debt, or make an assignment, or exercise the *jus disponendi* in any form that was consistent with good faith and fair dealing. Why then may they not confess a judgment to a *bona fide* creditor? The whole force of the argument on the part of Chidsey, consists in the assumption that this was an application of partnership effects to the separate debt of one of the partners. If such an application by an insolvent firm would indeed be fraudulent as to partnership creditors (a conclusion which I am not prepared to admit), the assumption is unwarranted that this was a separate debt after the 23d March, 1852. Regarded by both partners as essentially a partnership debt from the first, it became, on that day, a partnership debt in form and effect, and from that time to this, Siegel, Sr., has been a partnership creditor.

[*Siegel v. Chidsey.*]

The only peculiarity which the record discloses is that he acquired, by superior diligence, the first lien on the debtors' goods. This he had a right to assert, and the court ought to have rendered such answers to the points propounded as would have secured to him his rights.

There are several questions of evidence on the record, but the view that has been taken of the main points in controversy renders it unnecessary to notice the bills of exception to evidence.

The judgment is reversed and a *venire de novo* awarded.