# L. H. Culver *versus* The Reno Real Estate Co. and C. V. Culver.

1. Under the provisions of the Act of April 28th 1873, a real estate company issued first preferred stock, with the right to the holder to dividends not exceeding five per centum semi-annually, as the profits of the company might warrant, payable out of the net earnings of the company, and the company was bound at all times to apply any funds in its treasury or resulting from the sale of real estate, to the redemption at par of any portion of the stock upon demand of the holder. *Held,* that no holder of stock had a right to its redemption out of any specific assets other than proceeds of sale of real estate, nor out of money in the treasury, if it would work injustice to the creditors or stockholders of the company by interrupting or crippling the business of the company.

2. Where it appeared that there was no money in the treasury of said company in excess of the requirements of the current business or arising from the sale of real estate, a contract to pay the debt of one of its officers by the

company could not be based on an agreement not to demand redemption of stock.

3. Where no consideration passed to said company it was not liable as principal, and its officers had no authority to bind it as surety.

4. Where it appeared that a creditor knew that he was lending money to an officer of the company for his individual use, and that said company received no consideration therefor, the equities between the creditor and shareholders of the company must be determined against the creditor.

October 20th 1879.    Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ.    GREEN, J., absent.

Error to the Court of Common Pleas of *Venango county :* Of October and November Term 1878, No. 65.

Case by Lucien H. Culver against The Reno Real Estate Company and C. V. Culver.

The Reno Real Estate Company was incorporated under the provisions of the Act of 21st April 1854, authorizing joint owners, tenants in common and joint tenants of mineral lands to organize corporations, and under the provisions of the Acts of 3d April 1872, Pamph. L. 37, and 28th April 1873, Pamph. L. 79, issued first preferred stock to the amount of $500,000, and in the issue thereof provided that it should at all times be bound to apply any funds remaining in the treasury of the company, or resulting from the sales of real estate, to the redemption at par of any of that stock upon the demand of the holder thereof.    The principal business of the company was producing and selling oil, and it was so engaged on the 24th of September 1873, when it and C. V. Culver entered into a contract with the plaintiff, Lucien H. Culver, in which the following facts were recited, to wit:—

" C. V. Culver, being the holder of more than twenty-five thousand dollars of the first preferred stock of The Reno Real Estate Company, and by virtue of its terms being entitled to demand payment of the same out of any moneys remaining in the treasury of the company; but it being convenient for their operations that such stock should not now be presented and paid as aforesaid, and C. V. Culver requiring for his own use a large amount; therefore, for the purpose of obviating the necessity on the part of C. V. Culver of demanding from The Reno Real Estate Company present payment of said first preferred stock, the said Lucien H. Culver has, at the joint request of the said C. V. Culver and of The Reno Real Estate Company, agreed to loan to the said C. V. Culver the sum of twenty thousand dollars ($20,000), for which the said C. V. Culver has executed his promissory note bearing even date herewith, and being due the first day of February 1871, and has transferred to the said Lucien H. Culver, as collateral security therefor, first preferred stock of The Reno Real Estate Company to the amount of twenty-five thousand dollars ($25,000), at its par value."

The contract provided that, as inducement for making the loan,

[Culver *v.* Reno Real Estate Co.]

and in consideration of the same, the plaintiff might at any time before maturity of the note elect to receive payment of the same in oil, at the market price at the time of such election and place of delivery, and thereupon the said note should be liquidated and cancelled, and C. V. Culver and The Reno Real Estate Company should thereupon be jointly and severally bound to deliver to the plaintiff the number of barrels of oil into which the amount of the note should be so liquidated. It was further provided that The Reno Real Estate Company should not be bound to hold in stock any oil to meet the demand of the plaintiff, but that they should be bound to deliver all the oil they might have on hand at the time of the demand, and thereafter all their production, as fast as the same should be produced until the full amount should be delivered, and that from time to time, as any payments should be made on the note or deliveries of oil be made under the contract, proportionate amounts of the stock collateral should be surrendered. And it was agreed between C. V. Culver and The Reno Real Estate Company that in case the company should furnish any oil to the plaintiff pursuant to the contract, it should be entitled to receive first preferred stock from the plaintiff, the par value of which should equal the value of the oil so delivered.

On the 8th of November 1873, the plaintiff elected to receive payment of the note in oil, and thereupon a supplemental agreement was executed whereby the note was "liquidated and cancelled, and in lieu thereof C. V. Culver and The Reno Real Estate Company, each for themselves, agree to deliver to the said Lucien H. Culver, according to the terms of said contract, twenty-two thousand two hundred and twenty-two barrels of merchantable crude oil."

In the following March, 1874, The Reno Real Estate Company declared a dividend of 5 cent. upon its preferred stock, and the plaintiff demanded the amount due him, $1250, on the stock held by him as collateral. His right to receive it was questioned, and after some discussion the matter was settled by the company agreeing to deliver to him twelve hundred barrels of oil on the contract within a short time in lieu of the cash, and he giving them an acquittance against the dividend.

No part of the oil having been delivered, not even the twelve hundred barrels which were to have been delivered in lieu of the dividend, the parties entered into a new contract on the 13th of March 1875, by which, after reciting the obligation of the defendants to deliver to the plaintiff twenty-two thousand two hundred and twenty-two barrels of oil, and that the plaintiff held two hundred and fifty shares of the first preferred stock of The Reno Real Estate Company (par value $25,000) as collateral security for such obligation, the plaintiff surrendered the stock collateral, and it was agreed, among other things:

10 NORRIS—24

[Culver *v.* Reno Real Estate Co.]

1. That the defendants should deliver to plaintiff five thousand barrels of oil on or before the 30th of April 1875.

2. That if such delivery should be made plaintiff should not be entitled to demand any further deliveries until the 15th of June 1875, but that at any time thereafter he might call upon the defendants for the whole or any part of the remainder of the oil due him, and thereupon the defendants should either make deliveries òr, at their option, "liquidate the same in money at the highest price which such oil or pipe-line certificates shall bear on the day when such call was made, and execute to him the promissory note of The Reno Real Estate Company for the amount of such liquidation payable thirty days thereafter."

As collateral security for the performance of this contract the defendants transferred to the plaintiff one thousand shares of the preferred stock of another company, viz.: The Reno Company, not Reno Real Estate Company.

The certificate of the two hundred and fifty shares of first preferred stock of The Reno Real Estate Company was assigned by the plaintiff to that company: plaintiff testified that he surrendered the stock to the company, delivering the certificate with his assignment endorsed upon it, to the president of the company, while the defendant, C. V. Culver, testified that the surrender was made to him.

There were frequent interviews between the parties about the delivery of the oil, and none having been delivered, plaintiff made formal demand therefor on the 16th of June 1876, which not having been complied with this suit was brought.

At the trial before Trunkey, P. J., the plaintiff submitted the following point, to which is appended the answer of the court.

"If the contract of September 24th 1873, was fully executed by and on behalf of L. H. Culver, and The Reno Real Estate Company had reaped all the advantages to it contemplated in and by said contracts, and afterwards, to wit, in March 1874, the said L. H. Culver released the said company from the payment of a dividend amounting to $1250 on the $25,000 of preferred stock mentioned in said contract, upon the said company agreeing to deliver twelve hundred barrels of oil on account of said contract within a short time thereafter, and afterwards, to wit, at the making of the contract of March 13th 1875, the said L. H. Culver in part consideration thereof, assigned and surrendered to the said company the said $25,000 of preferred stock, such several transactions constituted a good consideration for the said contract of March 13th 1875, and it is too late now for said company to deny the legality thereof."

Ans. "Refused, for in its application to the facts of the case the plaintiff is not entitled to recover as against The Reno Real Estate Company."

The court affirmed the following point of defendant:

[Culver *v.* Reno Real Estate Co.]

" The agreement of March 13th 1875, taken in connection with the agreements of November 8th 1873, and of September 24th 1873, to which it was supplemental, was, so far as The Reno Real Estate Company was concerned, an attempt to guarantee or secure the individual indebtedness of C. V. Culver to L. H. Culver, and was beyond the power of the directors to make, and was not binding on said company."

The court also charged :

" The amount of claim for damages against C. V. Culver you will determine from the evidence. It would be the actual value of the oil at the time it was demanded, with interest thereon from that day to the present time, which you will calculate. The gross amount will be your verdict. Remember there was a credit of $5000. The jury will remember that as the case is submitted to you, all you have to do is to fix the amount. One party claims the price was at a date they claimed the demand was made, and the other party the price of oil at a different date when they claim the demand was made. Your verdict will be against C. V. Culver. All you need say is how much you find."

The verdict was, " the jury find for plaintiff, and against C. V. Culver in the sum of $35,012.79, and they find verdict for The Reno Real Estate Company."

The plaintiff took this writ and alleged that the court erred in their answer to the above points. This case was twice argued before the Supreme Court.

*J. H. Osmer* and *C. Heydrick*, for plaintiff in error.—The first preferred stock was a legal obligation, and when the company issued to C. V. Culver two hundred and fifty shares of the par value of $100 each, it contracted, with the express sanction of the law, to pay to him upon demand every dollar it should have in its treasury up to $25,000. The plain import of the recital in the contract of 24th September 1873, is that the company then had in its treasury not less than $20,000.

Certainly it would have been within the letter and spirit of the law, and of the contract made in pursuance of it, to have redeemed the stock—paid to the holder the par value thereof. And how does it transcend the powers of a corporation to agree to do *in futuro* what it may and is threatened otherwise to be obliged to do *in præsenti?*

Now, while it is true that so far as the plaintiff was concerned, security for the loan was the principal object of the contract, The Reno Real Estate Company was no more a surety than it would have been if the stock had been pledged without a contract on his part. A present obligation to redeem the stock was admitted, in respect to which the company was a principal obligor, and it simply undertook to discharge that obligation by delivery of oil if the

plaintiff should elect to receive such delivery within a specified time.

The company reaped all the advantages which it was contemplated would spring from the several contracts, and it is too late now to assume that the contracts were *ultra vires* : Oil Creek and Allegheny Valley Railroad Co. *v.* Pennsylvania Transportation Co., 2 Norris 160.

| *Dodd & Lee*, for defendants in error.—If there is any import in the recital in the contract of 24th September 1873, that the company had $20,000 in its treasury, it is just as plainly imported that it was needed to pay debts, and for such future operations of the company as were necessary to secure net earnings and pay dividends. To deplete its treasury at the demand of its vice-president for the redemption of his stock, would be gross injustice to creditors and other stockholders, and a pledge of future earnings for the same purpose would be equally in violation of law.

An agreement by a corporation to pay annual premiums to preferred stockholders, without reference to ability to pay them from earnings, is void as opposed to public policy : Lockhart *v.* Van Alstyne, 14 Am. Law Reg. (N. S.) 180.

Payments of interest on preferred stock can only be made out of profits bona fide earned, for a corporation has no power to contract for the payment of interest on dividends on its capital stock in excess of the earnings of the company : P. & C. Railroad Co. *v.* Allegheny County, 13 P. F. Smith 126.

The agreement if it was, as plaintiff claims, one by which the stock of C. V. Culver was to be redeemed by the application of the future production of the company, was clearly illegal and void. It was equally so, if, as we claim, it was a contract to guarantee a loan to C. V. Culver.

This company had no power conferred upon it by any act to become surety for the debt of another. If it needed money to meet legitimate demands it was empowered to borrow as provided by the acts creating it.

We claim this contract could not be held valid, because the superior equities are in favor of the stockholders and not the plaintiff. Whether all contracts *ultra vires* are against the policy of the law and void, matters not. This contract undoubtedly is. A contract of suretyship by a corporation "is a lesion in its very nature." *A fortiori* one made by and to secure the debt of a director. It is certainly as much against the policy of the law for directors to bind a company by contract to pay the debt of one of their number, as it is for a trustee to purchase at his own sale.

Mr. Justice TRUNKEY delivered the opinion of the court, January 5th 1880.

[Culver v. Reno Real Estate Co.]

The Reno Real Estate Company was incorporated June 21st 1872, under the Act of April 21st 1854 and its supplements, with the expressed object of doing everything allowed by the Acts of Assembly relating to mining companies. By Act of 1872, Pamph. L. 37, corporations are authorized to issue preferred stock, on which the holders may receive prescribed dividends, not exceeding 12 per cent., payable out of the net earnings of the company; and the Act of 1873, Pamph. L. 79, authorizes the issue of such preferred stock in classes, with preference in the rates, and in the order of payment, of dividends, or in the redemption of principal; with right to redeem on terms prescribed in the issue; and the company may specifically appropriate for payment of dividends, or for redemption of the principal, the revenues from any specific department of its business, or the proceeds of any specified portion of its assets or property : " provided that no injustice shall thereby be done to the existing rights of other stockholders or creditors of the company."

First preferred stock, limited to five thousand shares of $100 each, was directed to be issued by The Reno Real Estate Company, with right to the holder to dividends not exceeding 5 per cent. semi-annually, as the profits of the company may warrant, payable out of the net earnings of the company, and the company was bound at all times to apply any funds remaining in its treasury, or resulting from sale of real estate, to the redemption at par of any portion of the stock upon demand of the holder.

On September 24th 1873, the plaintiff loaned the sum of $20,000 to C. V. Culver, who was vice-president and a director of The Reno Real Estate Company. An agreement was made between the company, C. V. Culver and L. H. Culver, reciting that C. V. Culver is the holder of more than $25,000 of the first preferred stock, and by its terms he is entitled to demand payment of the same; that it is inconvenient for the operations of the company that said stock should be now presented and paid, and C. V. Culver wants a large amount of money; that for the purpose of obviating demand and present payment of said stock, L. H. Culver, at the joint request of C. V. Culver and the company, agreed to loan to C. V. Culver $20,000, for which C. V. Culver has executed his promissory note, and transferred to L. H. Culver, as collateral security therefor, $25,000 of said stock; and as inducement for making said loan, and in consideration of the same, the said C. V. Culver and the company each agree that L. H. Culver may, at any time before the maturity of the note, elect to receive payment of the same in oil, and thereupon the note shall be cancelled and C. V. Culver and the company shall be bound, jointly and severally, to deliver to L. H. Culver the number of barrels of oil into which the amount of the note shall have been liquidated, the delivery to be completed within ninety days from the time they are notified of the readiness

[Culver *v.* Reno Real Estate Co.]

of L. H. Culver to receive the same. From time to time, as any payments are made on the note, or oil delivered under the contract, proportionate amounts of the stock collateral shall be surrendered. C. V. Culver and the company agreed, L. H. Culver not a party thereto, that if the company shall furnish any oil to L. H. Culver, it shall be entitled to receive from him stock at par to value of the oil so delivered.

By a supplemental contract, dated November 8th 1873, said note was cancelled, and in lieu thereof C. V. Culver and the company, each for themselves, agreed to deliver to L. H. Culver twenty-two thousand two hundred and twenty-two barrels of oil, according to the terms of the contract of September 24th 1873.

March 13th 1875, the parties made another agreement, reciting that said company and C. V. Culver are bound by written contract to deliver to L. H. Culver twenty-two thousand two hundred and twenty-two barrels of oil, and that he holds as collateral security for the performance of the said contract two hundred and fifty shares of said first preferred stock, and at request of the company and C. V. Culver the said L. H. Culver surrenders the said collateral security, waives present right of demanding the oil, and the parties contract anew for delivering of the full amount of said twenty-two thousand two hundred and twenty-two barrels of oil at times and on calls particularly set forth; or they may pay in money the highest price of the oil at the date of a call, the parties of the first part being jointly and severally liable, and notice to one shall be notice to both; and as collateral security for their performance the said first parties transferred to L. H. Culver one thousand shares of the preferred stock of The Reno Company. At the date of this contract, as appears by their minutes, the executive committee authorized its execution; and April 10th 1875, the directors, as shown by their minutes, approved the action of the executive committee. C. V. Culver was one of the committee, also a director, and was present when said authority was given, and at its approval. J. P. Brinton, as president, executed each contract for the company.

The several contracts—successive links of a chain—in their natural order, have been brought into view, as from the whole the true character of the transaction is plain. The consideration of the first is a loan to C. V. Culver—the company received nothing. The second states the number of barrels of oil that shall be delivered in payment of that loan. The last refers to the existing contract for delivery of the oil, and binds anew for delivery of the same quantity of oil, without any new consideration of value to the company; but the contract is made to look more as if the debt was owing by the company than by C. V. Culver. To take the last alone is to shut the eyes against the fact that the company was merely surety for payment of the debt.

[Culver *v.* Reno Real Estate Co.]

It is not recited in the agreement of March 13th 1875, that the stock held as collateral was surrendered to the company, and no legitimate construction would make it a surrender to any one but its owner. As collateral security the company gave one thousand shares of stock in The Reno Company, and this appears to have been done without reference to the stock surrendered to Culver. It is unnecessary to say whether the property of a corporation may be given away by recitals in such contracts, for it is noticeable that Brinton, with the vice-president, director and borrower in the person of C. V. Culver at his side, did not recite that any money was in the treasury of the company applicable to redemption of said preferred stock, and did recite that it would be inconvenient for its operations that said stock should be paid. The writings do not show a present duty of the company to redeem said stock, nor that it was surrendered to it. By the Act of 1873 the clause in the issue of first preferred stock must be interpreted, and, therefore, no holder had right to its redemption out of any specific assets other than proceeds of sales of real estate, nor out of moneys in the treasury when such payments would work injustice to creditors and stockholders. No argument or authority is required to prove the gross injustice to creditors and stockholders that must inevitably ensue, if preferred stock is allowed to take all the money from the treasury, and thereby cripple or break down the business of the corporation. If light were needed it may be found in the opinion in Lockhart *v.* Van Alstyne, 14 Am. Law Reg., N. S. 180. Though that case arose out of a claim for dividends, the reasoning is suggestive of the ruin of a corporation, and injury to its creditors and shareholders, in case preferred stockholders exhaust the funds necessary to carry on its ordinary operations. The statute authorizes no such thing; and the phrase, "any funds remaining in the treasury," aside from moneys received on sales of real estate, can only mean such funds as are not necessary for the usual, current and proper business of the company. The contracts show no money in the treasury of the company in excess of the requirements for its current business, or arising from sale of real estate; and a consideration cannot be based on the agreement not to demand redemption of the stock.

Coming to the testimony adduced by the plaintiff, is it sufficient, in connection with the contract and minutes, to establish his case? If so, it should have been submitted; for the court, in directing a verdict for the company, could not consider the disputed testimony offered in its behalf. Ogelvie testifies that certificate No. 68, issued to L. H. Culver, was presented to the office of the Union Trust Company in New York city, for transfer by C. V. Culver, who made the transfer to The Reno Real Estate Company, and a new certificate for a larger amount, but embracing that of No. 68, was made to The Reno Real Estate Company, and delivered to C.

[Culver v. Reno Real Estate Co.]

V. Culver in person. L. H. Culver was a witness in his own behalf, and a careful one. He does not know who owned the stock mentioned in the contract of September 24th 1873, but remembers that he returned the certificate for it to the company, and procured the one in his own name, which he held till March 13th 1875, when he surrendered it to the company. He says: "I surrendered that certificate to Col. Brinton in exchange for one thousand shares of Reno stock." " Q. This one thousand shares of stock of The Reno Company was the property of The Reno Real Estate Company? A. I so understood it; yes, sir. Q. Then The Reno Real Estate Company paid you a thousand shares in the old company for this $25,000 of stock? A. I so understood it. Q. That is what you meant by surrender? A. Certainly; I do not mean to be understood I gave it up for nothing; I exchanged it. Q. They bought it; paid for it? A. Yes, sir." Thus he testified, in chief and in cross-examination. He was recalled in his own behalf, and said he " did not mean that the sole consideration of surrendering this Reno real estate first preferred stock was the Reno stock; but, that in accordance with that contract, it was all one thing." While he held C. V. Culver's stock as collateral, a dividend was declared which both claimed, and he agreed to forego the dividends, on Brinton's and C. V. Culver's promise to deliver one thousand two hundred barrels of oil on the contract. He says: "I accordingly receipted against the dividend." " I waived the dividend. I never got it." The oil was not delivered. It was argued that the dividend entered into the consideration of the contract, but neither writing nor witness proves this. There is no evidence that the company was released from payment thereof to the owner of the stock. If released, it would be only $1250 which passed to the company, and to that extent it might be answerable, but not for the whole debt, many times larger.

Literally there is no evidence of any money of the company which was applicable to redemption of the preferred stock, nor of acquiescence of the stockholders in the contracts, nor that it was usual for the company to agree to pay the private debts of its officers. L. H. Culver is presumed to know the law. He did not deny knowledge that his brother was vice president and director, although he was on the witness stand after Brinton had testified to this fact. He knew he was lending the money to C. V. Culver for his individual use, and that the corporation received neither money nor other valuable thing for its undertaking.

It was not contended by the plaintiff's counsel that the officers had power to bind the company as surety for another's debt. That a contract for that purpose is wholly beyond the powers of the corporation, expressly granted, or implied, by the statutes relating to mining companies, is so clear as not to be gainsaid. The attempt was to show that the corporation executed the contracts as a prin

[Culver *v.* Reno Real Estate Co.]

cipal, discharging its own obligation as a principal debtor represented by its preferred stock, and no right of subrogation would or could exist. That the lender and borrower designed to put the surety in that position may be quite certain, but the writings show the relation of the parties to each other, and, without comment on the other testimony, we think it insufficient to warrant a finding that the company had received such consideration as would make it liable for the debt. Even on the strong ground taken by Comstock, C. J., in Bissell *v.* Railroad Cos., 22 N. Y. 258, in his opinion, not the court's, the plaintiff cannot recover, for he allows the plea of *ultra vires* to avail in many cases. He says: " And I do not deny the validity of this excuse in many cases, I may say in all cases where it can be received without doing greater injustice to others. If the person dealing with the corporation knows of the wrong done or contemplated, and he cannot show the acquiescence of the shareholders, he ought not to complain if he cannot enforce the contract. Aside from the law of corporations, agreements which involve or propose a violation of trust will not be enforced by the courts where no greater equities demand it."

The expressed consideration of the contract, dated March 13th 1875, was the obligation of the one then existing, of prior date, which, not having been performed, was continued. Whether the invalidity of the contract be put on the ground of illegality, or of want of power merely, the case of Swan *v.* Scott, 11 S. & R. 164, and others which adopt its ruling, do not apply. In Swan *v.* Scott, the suit was " on a bond, the consideration of which was the judgment," which had been satisfied by the bond; and, of course, the defendant could not prove the illegal contract on which the judgment was obtained. Here the contracts have all been executory, none executed, between same parties, and on same consideration.

I am instructed to say that we are agreed that no error was committed in the answers to the points submitted.

Judgment affirmed.