# Walker *versus* Marine National Bank of Erie.

1. The confession of a judgment to a bona fide creditor, even though it be intended to, and has the effect of giving him a preference over other creditors, is not a fraudulent disposition of an insolvent estate.

2. An insolvent firm cannot, by voluntary assuming the individual debt of one of its members, and giving to the creditor of such member a judgment note for the amount of such debt, prefer such creditor to the firm creditors. It may do so, however, if there be a moral obligation on its part to pay the debt of the individual member.

3. A., a member of a firm gave, to his daughter a lot whereof he was seised, but deferred the execution of a deed. Subsequently A. sold the lot for $1,200, which sum he put into his firm, receiving credit on the books of the firm therefor. Nothing appeared on the firm books to show that this sum was the property of A.'s daughter, but all the members of the firm knew that such was the case. Subsequently, said firm, being in failing circumstances, gave to A.'s daughter a judgment note for $1,200, with intent to prefer her to the firm creditors. In a contest between A.'s daughter and subsequent judgment creditors of the firm for the proceeds of certain firm real estate taken into execution and sold,—*Held*, that there was a moral obligation on the part of the firm to pay the debt of A. to his daughter, that, therefore, the giving of the judgment note to her was not a fraudulent preference ; and that hence she was entitled to the fund.

4. A court should not frame an issue to determine the distribution of

[Walker v. Marine Nat. Bank of Erie.]

a fund, where there is no fund actually in that court, said fund being in some other court of co-ordinate jurisdiction.

5. Where such an issue is framed without objection by either party, and on the trial thereof errors are committed, the Supreme Court will on error reverse without awarding a venire facias de novo.

October 18th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Erie county:* Of October and November Term 1881, No. 265.

Feigned issue. On October 6th 1879, judgment was entered on a judgment note with warrant of attorney, dated October 1st 1879, payable October 2d 1879, in favor of Agnes C. Walker against William M. Caughey, Thomas M. Walker and C. J. Caughey. The defendants were partners, trading as Caughey, Walker & Co. At the date of the judgment note, the said firm was insolvent, and on October 7th 1879, the day after the entry of the above judgment, the Marine National Bank of Erie obtained a judg ment against the said firm in the United States Circuit Court for the Western District of Pennsylvania, in a suit begun prior to the date of said judgment note. About the same time other judgments were entered against the said firm, upon which executions were issued and the personal property of said firm was sold and the money appropriated to those judgments. An execution was also issued on the judgment of the Marine National Bank in the United States Court, under which the real estate of said firm and of the individual members thereof was sold and the proceeds paid into the United States Circuit Court for distribution among creditors.

Mrs. Agnes C. Walker presented her claim on said fund, averring that her judgment, being prior in date, was entitled in the distribution to priority of lien over the judgment of the Marine National Bank.

The Marine National Bank thereupon presented its petition to the Court of Common Pleas of Erie county averring that the said judgment note, given by Caughey et al. to Mrs. Walker, was given and received with the fraudulent intent of delaying and hindering the Marine National Bank in the collection of its debt from the firm of Caughey, Walker & Co.; and praying that an issue be awarded to determine whether it was so given.

The court, thereupon, made the following order:

"And now, January 5th 1881, an issue is awarded to be tried by a jury to determine whether the note of the defendants to Agnes C. Walker, now in suit, was given and received with the fraudulent intent of delaying or hindering the petitioner, the Marine National Bank of Erie, in the collection of its judgment at No. 2, January Term 1880, from the defendants there-

[Walker *v.* Marine Nat. Bank of Erie.]

in, to wit: Messrs. Wm. M. Caughey, Thomas M. Walker, and C. J. Caughey, partners as Caughey, Walker & Co.

" The said Agnes Walker shall be plaintiff and the Marine National Bank of Erie shall be the defendant in said issue.

" The plaintiff shall, within twenty days from the filing of this opinion and notice therein to her by the prothonotary or to her attorney of record, file a declaration of her claim in debt against the firm of Caughey, Walker & Co. The defendant in this issue, the Marine National Bank of Erie, shall plead nil debet with leave to file a special plea, setting forth at length the alleged fraudulent intent in receiving the same.

" The burden of proof shall be on the plaintiff to show that said note was given and received to secure the payment of a debt due by said firm to her and not for a debt due her by Wm. M. Caughey.

" If she proves that it was given and received for a debt of the firm then the burden of proof shall shift on the defendant in this issue to show that it was given and received to fraudulently hinder or delay them in the collection of their claim against said firm.

" If the jury shall find for the plaintiff they shall find the amount due, but if they find nothing due her, or that the note was given and received with the fraudulent intent to hinder or delay the collection of the defendant's claim, then their verdict shall be for the defendant generally."

On the trial of this issue, before Brown, P. J., of the 37th Judicial District, the following facts appeared:

Prior to and during the year 1865, William M. Caughey and John Clemens were doing business in Erie, Pa., under the firm name of Clemens, Caughey & Co. Caughey was then possessed of ample means. In the early part of 1865, he purchased two lots in Erie for $1,200 each. One of these lots he gave to his daughter Agnes C. Caughey (subsequently married to Thomas M. Walker), the plaintiff. He postponed giving her a deed, intending to do so on her birthday. Before that day arrived, viz.: on August 15th 1865, he sold the said lots and gave his daughter his individual note for $1,200, the value of the lot, and put the purchase-money of both lots into his firm of Clemens, Caughey & Co., for which he received credit on the books of the firm. No account was opened on the books of the firm with Mrs. Walker. This firm was succeeded by the firm of Clemens, Caughey & Burgess, afterwards by Caughey, McCarter & Co., and finally by Caughey, Walker & Co.; William M. Caughey remaining a member of all the said firms. This sum of $1,200 was used by the firm that first received it, down through the succeeding firms, including the firm of Caughey, Walker & Co., the same as other partnership money. When

[Walker v. Marine Nat. Bank of Erie.]

the firm of Caughey, Walker & Co., became in failing circumstances in 1879, William M. Caughey signed and procured the signatures of the other members of the firm of Caughey, Walker & Co., to the said judgment note in favor of Mrs. Agnes C. Walker for the sum of $1,936, which was the amount of the note given to her by him on August 15th 1865, with interest, less about $400, which the firm of Caughey, Walker & Co. had paid or assumed to pay on the purchase by her of a piano. On this note judgment was entered on October 6th 1879, as aforesaid.

The court, in answer to points presented by plaintiffs and defendants, and in the general charge, instructed the jury, substantially, that while a debtor in failing circumstances may lawfully confess a judgment to one creditor in preference over others, yet the debt to Mrs. Walker was not the debt of the firm of Caughey, Walker & Co., and the firm had no right to make it so by voluntarily assuming the indebtedness of one of their number to her, whereby she was given a preference as against the Marine National Bank, a creditor of the firm; that the money that was put into the original firm by William M. Caughey had become his money by a loan from Mrs. Walker, and not being her money, the firm was under no obligation in law or morals to assume or to pay it, and had no right to do so to the detriment of other creditors; and that, if William M. Caughey, in procuring the signatures of his partners to the note, acted for Mrs. Walker, and she adopted the transaction, she must be taken to have known whatever he knew as to the purpose for which the note was given. The court submitted to the jury the question whether the said note was given and received for the purpose of delaying and hindering the Marine National Bank in the collection of its indebtedness against the firm, instructing them that if they found that it was, their verdict should be for the defendant.

Verdict and judgment for the defendant. The plaintiff took this writ of error, assigning for error the above instructions of the court.

*D. B. McCreary*, and *L. S. Norton*, for the plaintiff in error.—This case is ruled by Siegel *v.* Chidsey, 4 Casey 279. It was there held that " where money was obtained on the personal credit of a member of the firm, and the money went into the firm and was used for its exclusive benefit, though this would not make the firm liable to the creditor, yet it would be a good consideration to support the subsequent promise of the firm to pay the debt; if the partners confess judgment to the creditor for such debt, it is not the application of the partnership effects to the private debt of a member of a firm, but the honest as-

[Walker *v.* Marine Nat. Bank of Erie.]

sumption by all the partners of a debt created for their joint benefit and which in equity and conscience all were equally bound to pay." The firm having thus the right to promise to pay the debt, and having so promised, the preference given to Mrs. Walker was not fraudulent as to other creditors of the firm : Reehling *v.* Byers, 9 W. N. C. 359 ; Covanhovan *v.* Hart, 9 Harris 495. The issue was awarded to try the question of fraudulent intent. There was no evidence of actual fraudulent intent, yet the court left the jury to infer it. Fraud is never presumed, but must be proved : Bear's Estate, 10 P. F. Smith 430 ; Reehling *v.* Byers, 9 W. N. C. 359 ; Louchheim *v.* Henzey, Ibid. 571.

*John P. Vincent* (with him *J. C.* and *F. F. Marshall*), for the defendant in error.—The case of Siegel *v.* Chidsey, 4 Casey 279, is not like this. There the money borrowed from the elder Siegel was always treated as a firm debt, the interest on it paid by the firm out of the partnership funds. It never was treated by the firm as the private debt of Field, for which he had taken a credit to himself on the books of the firm and treated as his own liability at all times until within a few days of failure, and then, and not until then, turned into a debt of the firm. It was always a liability of the firm, so treated and considered. There was ample evidence of fraudulent intent to take the case to the jury.

[SHARSWOOD, C. J.—The judgment was valid as against the firm—a third party, the bank, claimed that it was invalid as against it. Now what had the Court of Common Pleas to do with that question, there being no fund in that court for distribution ? The claimant should have gone into the United States court where the fund was for distribution. In asking for the issue in the Common Pleas, you asked that court to do the other court's work.]

On the distribution of a fund by an auditor, the validity of a judgment cannot be attacked. We therefore come into court where it was obtained, obtain an issue, and attack it in advance of distribution. We understand that to be the proper practice.

Chief Justice SHARSWOOD delivered the opinion of the court, January 2d 1882.

It is well settled that the confession of a judgment to a bona fide creditor, even though it have the effect of giving him a preference over other creditors, is not a fraudulent disposition of an insolvent estate. It was held by this court in Covanhovan *v.* Hart, 9 Harris 495, that a conveyance of land by a debtor in

failing circumstances to a creditor to pay an existing debt is not fraudulent although the parties contemplate that thereby the claims of other creditors will be defeated. Putting aside, then, all the evidence in this case that the parties confessed the judgment with the very purpose and design of securing for it a priority over the judgment of other creditors impending and about to be entered, the sole question was this: Was the plaintiff a bona fide creditor of the firm of Caughey, Walker & Co., at the time the judgment was confessed? She held the note of the firm. It was unquestionably good as against the firm. They could not have impeached it for fraud or want of consideration. It is certainly true that if there was no debt due from the firm to the plaintiff at the time of the giving of the note— if they had never received any consideration, they had no right create a debt by voluntarily assuming the debt of one of the members so as to be good against their creditors. But there were facts in the case which showed that they were morally bound for the debt. They had received the money. It had entered into the business of the firm, made their purchases, paid their debts, and in equity and good conscience the plaintiff stood upon as fair a platform as other creditors who had sold them goods or advanced them money. They might undoubtedly have repudiated it as a debt of the firm. We think the learned judge below erred in his charge as complained of in the third specification of error. He held, and so charged, that " the money that was put into the firm by W. M. Caughey was credited to him on the books of the firm : it had become his money by loan from Mrs. Walker : there was no privity between the plaintiff, Mrs. Walker, and the firm, and hence it is, we think it a mistake to say that the firm had the use of her money. It was the money of W. M. Caughey that they had the use of." We think there was error in making this fact conclusive, as the charge did. The mere form of book-keeping could not change the facts of the case or alter the result. That it was not noted on the book, that the money was a debt by the individual member to whom it was credited to the plaintiff, that it was a loan from her to him, merely, ought not to conclude the question. All the partners knew of the fact that she held her father's note for the money, though they did not consider it a debt of the firm, as certainly it was not. It was expressly held by this court, in Siegel *v.* Chidsey, 4 Casey 279, that when money was obtained on the personal credit of a member of the firm, and the money went into the firm and was used for its exclusive benefit, though this would not make the firm liable to the creditor, yet it would be a good consideration to support the subsequent promise of the firm to pay the debt; and a judgment confessed on such assumption was not fraudulent as to creditors. We cannot dis-

tinguish·in any material point between that case and the one now before us.

No exception was taken in the court below to the order directing the feigned issue. It is not our intention to award a venire facias de novo—because we are of the opinion that the issue should not have been ordered. There was no fund in court which rendered a decision of the question raised by the issue necessary. Such necessity might never arise. We are informed, indeed, that there was a fund in the Circuit Court of the United States for this district for distribution among creditors. It was for that court to direct an issue. It is plain that the court having ultimately to decide should have the settling, control and supervision of the issue. They should have the power to order a new trial if they should think the instructions of the court to the jury or their rulings upon questions of evidence erroneous, or the verdict against the weight of the testimony. It is their conscience which is to be informed. They understand the nature of the fund which they are required to distribute. If, for example, that fund was raised by a sale of the separate estate of W. M. Caughey, the main question in this case could not arise, for it was beyond all doubt that the judgment was confessed for a bona fide debt owing by him. The entry of the judgment against the firm did not change its character. He and his separate property were still bound by it, for the judgment was several as well as joint, as all judgments against partners are. Yet on the verdict and judgment in the court below, the defendants might go into the circuit court and insist that this finding is conclusive against the plaintiff's clear right to a priority of payment out of her father's separate property. Courts do not sit to decide hypothetical cases. It is not enough for a party invoking their decision to show that he may be interested in the question at some future time. He must have a present interest. I know of but one exception to this rule. When a party is in peaceable possession of land he may file a bill in equity quia timet to remove a cloud on his title which renders it unmarketable.

In Maynard *v.* Esher, 5 Harris 222, there was an amicable action to try in the District Court of Philadelphia a question arising on a proceeding in the Common Pleas of that county. There was no exception to the action nor assignment of error, but Lowrie, J. said: "When issues of fact arise and a jury is demanded, the court should oversee the framing of the issues, and order them to be tried by its own jury, and then proceed itself to determine the rights of the parties found and admitted. . . . . The District Court might very properly have refused to try this wager in aid of a court that could do its own business; and we have had some hesitation in allowing it to

[Reck v. Clapp.]

be heard before us." In Rowland's Estate, 7 Penn. Law Journal 312, 4 Clark 199, upon a petition ordered by the Court of Common Pleas, the District Court of Philadelphia held, that it it is not competent for the court, upon the application of a third person, to vacate and annul a judgment between other parties who ask no action and attempt by the process of the court no injury to his rights, and which judgment, though fraudulent and inoperative as to him, is perfectly good as to all the world beside. There may be no impropriety in my saying that the learned president of the Court of Common Pleas—Judge KING —who had directed the application to be made to the District Court, assured me afterwards that he thought the refusal of that court to entertain the case was entirely right.

Judgment reversed.