## Miller et al. *v.* South Hills Lumber and Supply Company (Brown, Appellant).

294

Argued March 28, 1939.   Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and STERN, JJ.

*Robert R. Wertz,* with him *Elverton H. Wicks,* for appellant.

*Charles F. Patterson,* with him *Edwin M. Rhea,* for appellee.

OPINION BY MR. CHIEF JUSTICE KEPHART, May 8, 1939:
William F. Brown, as an individual, owned and operated the South Hills Lumber and Supply Company prior to its incorporation in 1930.   He was then appellant's husband, although by the time of the hearing in this case they had been divorced.   J. T. Brady, who was interested in the business, placed securities belonging to him as collateral with the bank for a loan of $15,000 to Brown in 1930.   The understanding was that

a corporation was to be formed by Brown, and Brady was to receive shares of stock in the company. Brown gave his judgment notes to Brady to protect him against loss. The proceeds of the loans from the bank were immediately placed to the credit of the company, and in June, 1930, the corporation was formed as contemplated. The assets were turned over to the corporation, and Brown, president and director, received 1,200 of the 1,210 shares outstanding. The ten remaining shares were held by two of the other three directors.

Brady, dissatisfied with the arrangements, in September, 1930, threatened to force the corporation into receivership unless his collateral was released. The four directors apparently felt that Brady had a valid claim against the corporation, and to preserve the business they prevailed on appellant to replace Brady's collateral with her own. On September 19, 1930, without any formal corporate action, Brown executed a new note to the bank for $20,000 in his own name, discharging the $15,000 obligation and Brady's collateral, and appellant's securities to the amount of $60,000 were pledged for payment of the $20,000 note. On the same day, the president and treasurer gave her a judgment note for $20,000 to protect her, the directors having informally consented to its execution. The proceeds of the $20,000 loan were used to pay the $15,000 obligation for which Brady's shares had been pledged, and the balance for payroll and other corporate purposes.

On October 19, 1931, appellant was given a note executed by the president and treasurer for $1,050 to cover interest to that date. One week later, another creditor of the corporation having objected to appellant's preferred status by virtue of the power to confess judgment in her note, she was induced to surrender her judgment note in exchange for the corporation's written agreement, signed by the president and treasurer to protect her against loss. There was evidence the latter instrument was executed upon formal action of the di-

rectors, but the entry of this action upon the minutes had been neglected by the secretary. It appears that nothing has been paid to the bank or to appellant on these obligations.

A receiver was appointed for the company in 1932. Appellant, having repeatedly but unsuccessfully requested him to pay her claim which she asserted against the corporation, filed an affidavit of claim in the court below on January 27, 1937, for $21,050, with interest from October 19, 1931, which, after hearing, the court dismissed on the ground that no properly authorized obligation of the corporation had been shown. The court also intimated that appellant was barred by laches in pressing her claim.

In view of the fact, as found by the court below, that Brown owned the company prior to its incorporation and thereafter owned 1,200 of 1,210 shares outstanding, the corporation was substantially a continuance of the old business in a new form. Brown continued to dominate the business. The old name was retained. The assets of the old company were transferred to the new one. Under such circumstances, the courts will not permit the assets in the new company to escape the claims of creditors of the old. The corporate fiction will be disregarded and a continuing liability will be imposed on the business for obligations accrued before incorporation, at least to the extent of pursuing the assets transferred. See *Kulka v. Nemirovsky (et al.)*, 321 Pa. 234, where the cases are collected and fully discussed.[1] Nor will courts permit such claims to be defeated where, in a close corporation, transactions concerning them are *apparently* made with corporate authority although none actually existed.[2] The corporate liability comes through

---

[1] *McCloskey v. North Penn Bank et al.*, 270 Pa. 284, cited by appellees, is distinguishable on the ground that the ownership of the corporation and its predecessor was not substantially the same.

[2] The Act of May 12, 1925, P. L. 615, section 2, is discussed later.

the continuing liability of the assets for the debt prior to incorporation. This is one of those instances where courts will, for the purpose of effecting substantial justice and protecting innocent parties, look through the corporate form and regard the corporation and the individuals owning its stock as identical. Thus the corporate screen was torn down in *Tucker v. Binenstock,* 310 Pa. 254, 263, to prevent the consummation of an illegal transaction; in *Stony Brook Lumber Co. v. Blackman et al.,* 286 Pa. 305, 309-310, to permit the disposal of property where the rights of innocent third parties did not intervene; in *Waring v. WDAS Broadcasting Station, Inc.,* 327 Pa. 433, to permit the actual owner of a one-man corporation to maintain an action as a real party in interest; and in *Warburton v. John Wanamaker et al.,* 329 Pa. 5, to give major effect to the intent of the individual who really owned the corporation.

While Brady, by depositing his collateral with the bank, may have been a creditor consenting to the transfer of the property to the corporation, it did not appear that he relinquished any claim against the assets transferred. On the contrary, he not only contemplated corporate liability but undoubtedly pledged his collateral on that condition, and asserted corporate liability in his action toward receivership which brought about a release of his collateral by the bank.

Appellant substantially assumed the position occupied by Brady and acted for the benefit of the corporation. It cannot deny liability on the agreement to protect appellant's collateral for the succeeding loan. The claim that arose under that agreement was valid. It was in effect the note given her, which had its inception in the continuing liability of the assets for a debt prior to incorporation. The corporate obligations arising therefrom were executed in appellant's favor by the president and treasurer, to refund that claim. Although a corporation cannot assume a private obligation of one of its officers where the funds are used for his private

purposes *(Culver v. Reno Real Estate Co.,* 91 Pa. 367; *Fehr v. Campbell,* 288 Pa. 549; *Bank of Shamokin v. Waynesboro Knitting Co.,* 314 Pa. 365), it can do so where, as here, the funds are borrowed and used for the benefit of the corporation: *Buse and Caldwell Dissolution Case,* 328 Pa. 211. See also *Siegel v. Chidsey,* 28 Pa. 279; *Walker v. Marine Nat. Bank of Erie,* 98 Pa. 574; *Larzalere & Son v. Tiel & Tooley,* 3 Pa. Superior Ct. 109.

These obligations were incurred when the Act of May 12, 1925, P. L. 615, section 2, was in force. Under that Act, the corporation is liable on obligations executed by the president or vice-president and the secretary or treasurer, unless the holder is charged with knowledge that they were not properly authorized: *Bank of Shamokin v. Waynesboro Knitting Co.,* 314 Pa. 365; *Bennett v. Rittenhous B. & L. Assn.,* 313 Pa. 391. See also *Oliver v. Safe Dep. & Title Guar. Co.,* 315 Pa. 552, 556. Appellant was not charged with such knowledge. She as well as all the directors considered the corporation liable for the $15,000 bank loans. The fact she executed the hypothecation papers in blank does not alter her claim in the least. The $20,000 loan for which her collateral was pledged was used to satisfy the $15,000 obligation and for other corporate purposes; the corporation, or its receiver, cannot evade responsibility on the agreement and note executed to appellant by the appropriate officers.

That a corporation can bind itself to protect against the loss of securities pledged for its predecessor's obligations is clear under *Baldwin v. Devereux Schools, Inc.,* 302 Pa. 569, which, except for the fact that the corporation expressly assumed all obligations of its predecessor, is strikingly similar to the instant case.

It was not incumbent upon appellant to show by the minutes of the corporation that formal action had been taken. The Act of 1925 renders that unnecessary. Moreover, where the corporation is a close one, as here, strict

adherence to corporate formalities is not always required; establishment of the action of directors is not confined to proof of the minutes, and informal action may be ratified by appropriate corporate recognition of its earlier action. *McCay v. Luzerne & Carbon County Motor Transit Co.,* 125 Pa. Superior Ct. 217. See also *Oliver v. Safe Dep. & Title Guar. Co.,* 315 Pa. 552, and *Bonini et al. v. Family Theatre Corp. et al.,* 327 Pa. 273, where the acquiescence and consent of all the shareholders and directors were held to bar objection to the corporate authority. Here, though the minutes were neglected, it is sufficient that a formal meeting was held at which unanimous approval and recognition were accorded to appellant's claim.

The trial court's suggestion that appellant's claim is barred by laches must be rejected. It was found as a fact that she had repeatedly sought payment from the receiver. Such conduct is inconsistent with a conception of acquiescence and delay. The claim was filed before the audit of the receiver's final account, as required by section 23 of the Act of June 4, 1901, P. L. 404, and before the Statute of Limitations had run on the corporate obligations. Appellant's claim should have been allowed.

Order reversed at appellees' cost.