# McNaughton's Appeal.

1. One of several partners cannot subject the partnership property to levy and sale for his individual indebtedness, by giving a judgment note in the firm name without the knowledge or consent of his co-partners ; even though the money for which the judgment note was given, was used by such partner for partnership purposes, as his contribution to the firm.

2. A judgment entered on such a note, and sale of the partnership property thereunder, is a fraud on the creditors of the firm, and may be set aside as to them, in a collateral proceeding before an auditor appointed to distribute the fund derived from the sale.

November 28th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

APPEAL from the Court of Common Pleas of *Crawford county :* Of January Term 1882, No. 279.

Appeal of William McNaughton and others, creditors of the firm of Kingsland & Reynolds, from a decree of said court, distributing the proceeds of a sheriff's sale of the personal property of said firm.

The Auditor appointed to distribute the fund found the facts to be as follows : In the winter of 1880–1881 J. S. Reynolds went to Titusville, Crawford county, where he proposed to carry

on the grocery business. He asked A. P. Bennett, an acquaintance, to advance him money for this object. Bennett agreed to do so, and on March 3rd 1881, Reynolds drew a note to Bennett's order for $1,200, which the latter endorsed, and the Second National Bank discounted.

On the last day of February 1881, Reynolds and W. W. Kingsland agreed verbally, to enter into copartnership in the grocery business, and to buy out the stock of groceries owned by one John Besanson. Under the agreement Reynolds was to furnish the capital from the start, some $1,500 or over, and Kingsland was to pay Reynolds interest on the money he put in the business, in excess of any that Kingsland should put in ; and Kingsland was to devote his time and labor to the business and receive half the profits. The arrangement between Bennett and Reynolds, was made before any agreement in reference to a partnership was entered into between Kingsland and Reynolds.

With the $1,200 procured from the bank, Reynolds paid Besanson $780 for his goods and afterwards bought with the balance other goods for the store.

On May 6th 1881, when the note became due at the bank, it was renewed by another note drawn by Reynolds individually, and endorsed by Bennett. On May 18th 1881, in consideration of the surrender of the note of May 6th, Reynolds gave the bank a judgment note for $1,200 payable the next day, signed by him in the firm name of Kingsland & Reynolds, and also by himself individually. On this note the bank entered judgment May 20th 1881, issued execution and levied upon the defendants', Kingsland & Reynolds, stock of groceries on May 21st 1881 ; On same day, after the levy, Kingsland, the other copartner, executed judgment notes in the name of the firm, and judgments were entered upon them in behalf of all the other execution creditors, and same stock of groceries levied on same day, 21st May 1881. On these latter writs the goods were advertised and finally sold by the sheriff for $916.25.

On May 23rd 1881, on application of Kingsland a rule was granted by the court to show cause why the judgment of the Second National Bank should not be opened as to Kingsland, and the proceedings stayed, which rule, after argument, was discharged.

The firm having made an assignment, the bank claimed the entire fund, while the other judgment creditors contended that although the judgment of the bank was prior to theirs, yet it was upon the individual indebtedness of Reynolds, and could not be satisfied from the proceeds of a sheriff's sale of the firm property.

The Auditor reported in favor of the creditors, finding as a

fact, that the judgment of the bank was founded on an individual debt of Reynolds, and awarded the fund : First, to the execution creditors, as to whom there was no doubt, in regard to their being firm creditors ; Second, to the assignee for the benefit of the general creditors of the firm.

Upon exceptions filed to this report on behalf of the bank, the court reversed the finding and award of the auditor, and decided that the bank judgment was upon a firm debt, and entered a decree awarding the entire proceeds of the sheriff's sale to the bank.

Whereupon, McNaughton, the other judgment creditors and the assignee, took this appeal, assigning for error the decree of the court; and its action in sustaining the following exception to the auditor's report :

"The auditor erred in undertaking to set aside a judgment that had already been passed upon by the court and decided to be good against the firm, viz : the judgment of the Second National Bank of Titusville, Pa. *v.* Kingsland & Reynolds, and J. S. Reynolds, No. 25, September 1881, Ex. D."

*Neill* (with whom was *Heywang*), for the appellants.—The question is, whether the bank judgment note was a debt of the firm, or the individual debt of Reynolds. The Auditor decided that the latter was the fact. He had power to make this decision, and his finding is conclusive unless clearly shown to be a mistake: Second National Bank's Appeal, 4 Norris 528 ; Brua's Appeal, 5 P. F. S. 294. Though the money obtained from the bank was paid for the original stock of goods and additions to it, it was not a partnership payment, but the individual contribution of Reynolds: Graff *v.* Hitchman, 5 Watts 454 ; Donally *v.* Ryan, 5 Wr. 306 ; Story on Part § 148 ; 1 Collyer on Part § 491. The attempt to secure the proceeds of the firm property under these circumstances, was a presumptive fraud : Purdy *v.* Powers, 6 Barr 492 ; Noble *v.* McClintock, 2 W. & S. 152 ; 26 Albany L. J. 38. A refusal by the court on the application of Kingsland, to open the bank judgment, as to him, did not impair the rights of other creditors in a collateral investigation when they alleged that the judgment was a fraud. In Quinn's Appeal, 5 Norris 447, the court below refused to open the judgment, but on appeal this decision was reversed.

*F. B. Guthrie* (with whom was *Julius Byles*), for appellee.— It is well settled that an auditor cannot inquire into the validity of a judgment regular on its face. This is expressly held in Appeal of Second National Bank of Titusville, 4 Norris 528. PAXSON, J., in delivering the opinion of the court, says : "It has been settled by a line of authority that, in the distribution of

a fund, an auditor cannot inquire into the validity of a judgment regular on its face : Dyott's Estate, 2 W. & S. 557 ; Leeds v. Bender, 6 Id. 315 ; Ellmaker v. The Insurance Co., Id. 442 ; Thompson's Appeal, 7 P. F. Smith 175. But he may receive testimony to show that since its rendition, the judgment has been paid or otherwise satisfied."

" All the cases say that the mere fact that the debtor has been overreached and a fraud perpetrated upon him by the creditor, gives no right to other creditors to attack the judgment collaterally. So long as it stands a valid judgment against the defendant, it is good against them." In Quinn's Appeal, supra, the judgment was not regular on its face and its validity might therefore be inquired into. Here the court decided that the judgment was res adjudicata and it must therefore remain in force.

Mr. Justice STERRETT delivered the opinion of the court, December 30th 1882.

The fund in controversy is the proceeds of partnership property sold on executions against the firm of Kingsland & Reynolds. It is conceded that the execution creditors of the firm are entitled to participate in the distribution in the order of their respective writs ; but it is contended that the claim of the Second National Bank of Titusville, for which it obtained judgment and issued the first execution, never was a debt of the firm. In this the appellants are sustained by the report of the learned auditor, who, upon evidence of the most satisfactory character, found that the claim of the bank originated in a note for $1,200, made by Reynolds, one of the partners to the order of and indorsed by Bennett, at whose instance the same was discounted by the bank for the individual benefit of the maker. When the note matured it was renewed for sixty days ; but about two weeks thereafter, the bank, through the intervention of the indorser, procured a judgment note from Reynolds, for the same amount, signed by him in the firm name, and by himself individually. On that note judgment was immediately entered and the execution in question issued.

It is unnecessary to refer particularly to the testimony upon which the Auditor based his conclusion that the claim of the bank was originally the personal debt of Reynolds and never became the debt of the firm. The presumption is that the finding of the Auditor is correct ; but, even if we were to reverse the well established rule on that subject, the decided preponderance of the evidence would constrain us to say his conclusion was clearly right, and that the bank must have known the debt was one for which the firm was not liable. Why then should the individual creditor of Reynolds be permitted to take the

firm assets, to the exclusion of partnership creditors? It is suggested that the money of the bank was used in paying for the original stock of merchandise with which the firm commenced business, and in replenishing the same from time to time; and, therefore, by some species of equity, the firm should be liable for the money loaned to one of the partners, on the individual credit of himself and his indorser. It is a mistake to suppose that any such ground of liability is tenable under the facts of this case. The agreement between the partners, as found by the Auditor, was that Reynolds should furnish the capital necessary to commence business and receive interest on so much thereof as might be in excess of his own share; and the testimony shows that the money was borrowed by Reynolds from the bank for the purpose of providing his portion of the capital. It was neither loaned to the firm nor upon its credit. On the contrary, it clearly appears that the note was discounted for the individual benefit of Reynolds and on the credit of himself and Bennett, his accommodation indorser; and hence the bank had no valid claim on the firm. If authority for so plain a principle be necessary, it may be found in Donnally *v.* Ryan, 5 Wright 306, in which Mr. Justice WOODWARD says: " Where no credit is given to a firm, which in law is a distinct person from the members who compose it, why should redress be sought against the firm? As well might a creditor, who had loaned his money on the credit of an individual, attempt to pursue it into the business or property of third parties and hold them responsible to himself." In view of the fact, which must have been known to all parties concerned, that Reynolds individually, and not the firm, was the bank's debtor, the taking of a judgment note signed by Reynolds in the firm name without the knowledge or consent of his partner, for the purpose of subjecting the partnership property to seizure and sale on execution, was a fraud upon the creditors of the firm as well as the non-consenting partner: Purdy *v.* Powers, 6 Barr 492, and cases there cited. One of the general incidents of the partnership relation is the right of each partner to apply the firm assets to the payment of its liabilities; and, following out that principle, it has been held that one of several partners may justly subject the joint property to levy and sale in discharge of partnership indebtedness, by giving a judgment note therefor in the name of the firm, as was done by Kingsland in this case: Grier & Co. *v.* Hood, 1 Casey 430; Ross *v.* Howell, 3 Norris 129. But, it is a very different thing, in a legal as well as moral point of view, for a partner to thus undertake to pay his individual debt without the knowledge of his copartner.

It is also contended that the judgment and execution of the bank cannot be questioned in this collateral proceeding, especially since the court refused, on the application of Kings-

[Erie, &c. R. R. Co. *v.* Johnson.]

land, to open it as to him.  Undoubtedly, the general and well established rule is, that an auditor, in the distribution of money in court, cannot inquire into the validity of a judgment regular on its face : but it is equally well settled that a collusive judgment may be attacked collaterally by judgment or execution creditors, who would otherwise be defrauded thereby.  Whenever such a judgment, or the execution issued thereon, thus comes in conflict with the claims of creditors, they may avoid its effect by showing that, as to them, it is a nullity :  Dougherty's Est., 9 W. & S. 196; Lewis *v.* Rogers, 4 Harris 18; Thompson's Appeal, 7 P. F. Smith 175, 178; Second National Bank's Appeal, 4 Norris 528.

The facts of the case before us bring it fairly within the principle recognized in the cases above cited, and we are therefore of opinion that the learned judge erred in sustaining the exceptions to the auditor's report and awarding the money to the appellee's execution.

> Decree reversed; and it is now adjudged and decreed that the auditor's report be confirmed and the fund distributed in accordance therewith; and it is further ordered that the Second National Bank of Titusville forthwith pay into the court below the money erroneously awarded to and received by it, together with the costs of this appeal.