# Coffin and Hurlbut's Appeal.

1. It is unlawful for the general partners in a limited partnership, organized under the Act of March 21, 1836 (P. L., 143), to assume, without any consideration, the debt created by the special partner in procuring the money which he pays into the firm as his special contribution.

2. In a limited partnership formed under said Act, the general partners

gave judgment notes to the individual creditors of the special partner, for the money furnished him by said creditors for his special contribution to the firm. Upon the insolvency of the firm these notes were entered up and executions issued thereon were levied on the firm assets.

*Held,* that the judgments and executions on said notes were void as against general creditors of the firm, not only because they were without consideration, but because they were against public policy, and in contravention of the Act of March 21, 1836.

3. Under said Act the special contribution is a fund, appropriated by law to the payment of partnership debts, which cannot be withdrawn or diverted, either directly or indirectly, to the detriment of firm creditors.

April 9, 1884.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ.   GREEN, J., absent.

APPEAL by Charles H. Coffin and William H. Hurlbut, trading as Coffin and Hurlbut, from a decree of the Court of Common Pleas, No. 3, of *Philadelphia County :* In Equity: Of January Term, 1884, No. 267.

Bill in equity, between Charles H. Coffin and William H. Hurlbut, trading as Coffin & Hurlbut, complainants, and Henry Gruber and William P. Hoopes, trading as Gruber, Hoopes & Co., (a limited partnership organized under the Act of March 21, 1836), et al., defendants, praying a decree to enjoin the sale of partnership property under certain judgments, confessed in alleged violation of § 21 of said Act of 1836, and for the appointment of a receiver.

The cause was heard on bill and answer from which the following facts appeared: The defendants, Henry Gruber, William P. Hoopes and Albert H. Mershon, on July 1, 1881, formed a limited partnership under the Act of March 21, 1836. The general partners were Henry Gruber and William P. Hoopes, and the special partner, Albert H. Mershon. The capital contributed by the special partner was $12,000. No capital was furnished by the general partners. Of the $12,000, Mershon borrowed $4,500 from Anna E. Cadwallader, and $7,500 from Kate M. Lacey, whom he afterwards married, giving his notes therefor.

On January 2, 1882, judgment notes signed by Henry Gruber and William P. Hoopes, in their individual names, but alleged to have been executed in behalf of the firm with the assent of Mershon, were given to Anna E. Cadwallader and Kate M. Lacey, for $4,500 and $7,500 respectively; and the notes given by Mershon to the latter were returned. The firm was then solvent.

In September, 1883, Gruber, Hoopes and Co. failed, the said judgment notes were entered of record, and the firm's assets levied on under executions issued thereon.

Coffin and Hurlbut, who were general creditors of the firm,

claimed that these executions were void under the Act of
1836, and filed this bill praying that the sale under them be
stayed, and a receiver appointed.

The bill was dismissed by the court, LUDLOW, P. J., deliver-
ing the opinion, which was, *inter alia*, as follows: " . . . . .
Does the Act of March 21, 1836, whereby limited partnerships
may be created, and the general policy of the law, which
ought to govern in the construction of that statute, prohibit
one who loans money to a special partner from taking such a
security from the general partners of the firm; and is the
sum paid in by a special partner in substance a trust fund,
and as such to be held only for the benefit of the general
creditors of the concern? The question is, we believe, new,
and difficult of solution. . . . . . To enable one to embark in
business, and yet protect him as a partner from general
liability was the real object of this law, hence the Act, in
detail, declares how this may b́e safely done. The amount of
money actually paid in was the limit fixed by, law to the
liability of a special partner. The fund thus contributed
gave credit to the concern, and was immediately placed at
hazard in the business. In the absence of fraud, or even pre-
tended fraud, every creditor of the firm knew, or was supposed
to know, that a certain amount had been contributed and
might be lost. The special partner was also in any event
always liable for the general debts of the firm to the amount
paid in, and his credit, to that extent, at least, was involved
in the general credit of the partnership.

" How can it be held that a special fund could in any event
be held in special trust? The very fact that all the capital
of a firm is at all times at a risk, forbids the idea that any
specific fund can be held in trust. The very idea of a trust
fund involves the thought that that fund must at all times be
securely invested, and held to meet the demands of a bene-
ficiary of the trust. No one contends that this special partner
is not liable for the debts of the concern, at least in the extent
of \$12,000. If, in the course of events, the creditors of a
special partner desire additional security for the fund paid in
by that partner, and by them loaned to him, who is injured
by the transaction? The general partners are benefited, be-
cause the capital advanced remains intact, and is only secured.
Surely the creditors cannot complain, because the money
advanced is in the concern, and is daily used in its business.
It gives so much additional credit to the firm. Doubtless one
intending to become a special partner might borrow the money
which he intended subsequently to contribute to a partner-
ship, and give any individual security desired therefor.

" If, in the course of business, a firm becomes embarrassed,

what is to prevent the creditor of a special partner from suing out his individual security, and, as against that partner, obtain a judgment and issue execution thereon ? The very fact that the general partners of a concern might be willing to assume the debt, might prevent insolvency, and thus protect the general creditors.

" Whichever way we look at the question we cannot avoid the conclusion that the law intended, and all that it intended, in the absence of fraud, was to provide a method by which, when certain specified sums of money were paid into a firm by a person called a special partner, the amount paid and the name of the person contributing should be known ; and that thereafter this sum should of course be liable to the risks of the business, and the liability of the special partner be limited. . . . . ." Decree accordingly.

The sheriff then proceeded to sell under the executions, but retained the proceeds of the sale to await the final determination of the cause. The complainants took this appeal, assigning for error the decree of the court dismissing their bill.

*Samuel Dickson* (with whom were *Richard C. Dale* and *John C. Bullitt*), for appellants.—The twenty-first section of the Act of March 21, 1836 (P. L., 143), prohibits the withdrawal from the firm of the capital furnished by the special partner. Section 23 of the same Act provides that " In case of the insolvency or bankruptcy of the partnership no special partner shall, under any circumstances, be allowed to claim as a creditor, until the claims of all the other creditors of the partnership shall be satisfied." It follows that the general partners of a limited partnership, organized under the Act of 1836, cannot confess a judgment, which will be a lien upon the partnership assets, in favor of a creditor of a special partner who has lent money to said special partner to form his contribution to the firm. The confession of such a judgment is simply an indirect method of attempting to withdraw the capital of the special partner, and as such, is clearly forbidden by the statute. It is the same, in contemplation of law, as a confession of judgment made to the special partner directly ; and it is well settled that a special partner cannot claim as a creditor : Dunning's Appeal, 8 Wr., 150. How then can one who furnishes him with capital for the express purpose of using it as a special contribution be in any better position ? The special contribution goes in as capital, and the creditors have a right to demand that it shall remain as such, and to prevent either the special partner, or the general partners, or the person who made the loan, from changing its character or converting it from capital into a debt. This is substantially

admitted in Purdy *v.* Lacock, 6 Barr, 490. It is conceded
that the special capital "should of course be liable to the
risks of the business," but it is not so liable after it has been
secured in such a way as to have a potential lien on the assets
of the firm in preference to the general creditors. Where a
general partner has borrowed money and put it into the busi-
ness, all the partners have had the benefit of it, and there is
no rule of law which prohibits the assumption of the debt by
the firm, but the very essence of a contribution of special
capital under this Act is to postpone the claims of the con-
tributor till every other creditor has been paid. The partner-
ship creditors have no adequate remedy at law, and the case
is one where a court of equity has full power under the
statute to grant an injunction and appoint a receiver: Act of
June 16, 1836, § 2; Hunter's Appeal, 4 Wr., 194; High on
Receivers, § 508.

*John A. Brown* (with whom was *Thomas J. Diehl*), for
appellees.

Mr. Justice PAXSON delivered the opinion of the court,
April 21, 1884.

This record presents an interesting question which is not
free from difficulty. The plaintiffs are creditors of the firm
of Gruber, Hoopes & Co., and filed this bill in the court below
against said firm and certain execution creditors thereof, under
the following circumstances: The firm of Gruber, Hoopes &
Co. was a limited partnership, formed under the Act of 1836,
with Henry Gruber and William P. Hoopes as general part-
ners, and A. H. Mershon as special partner. The amount of
capital contributed by the special partner was $12,000 in cash,
all of which he borrowed for the purpose of placing it in the
firm; $7,500 of it having been obtained from Mrs. Lacey, now
the wife of the said Mershon, and $4,500 thereof from his sis-
ter, Mrs. Cadwallader. The general partners contributed no
capital. A few months after the organization of the firm,
Gruber and Hoopes, the two general partners, executed in
their joint individual names two judgment notes, one of them
in favor of Mrs. Lacey for $7,500, and the other in favor of
Mrs. Cadwallader for $4,500. The only consideration for
these notes was the money borrowed by Mershon, and placed
by him in the firm as his special capital under the articles.
When these judgment notes were received by Mrs. Lacey and
Mrs. Cadwallader, they returned to Mershon the notes which
he had given them respectively. In less than eighteen months
thereafter the firm confessed its insolvency, whereupon Mrs.
Lacey, now Mrs. Mershon, and Mrs. Cadwallader entered their

judgments, issued execution and levied upon the assets of the firm. The general creditors contested the validity of these executions upon the ground that they were illegal under the Limited Partnership Act of 1836, and filed this bill in order that this question might be properly raised and decided.

The firm does not appear to have been insolvent when the judgment notes were given; hence the case does not come within the letter of the provisions of sections 20 and 21 of the Act of 1836, which prohibit any sale, assignment or transfer of the property or effects of such partnerships, by either a general or special partner, when insolvent or contemplating insolvency. The real question is whether it is lawful for the general partners, without any consideration, to assume the debt created by the special partner in procuring the money which he paid into the firm as his contribution of capital under the articles.

The learned judge below held that the real object of the Act of 1836 was to enable one to embark in business without any liability therefor, beyond the amount contributed as capital. Assuming this to be the principal object, the Act requires a rigid adherence to its terms, and a compliance in good faith with all its provisions as the price of the privileges thereby conferred. The creditor knows by an examination of the articles that the special partner has contributed a certain amount of money in cash, which goes into the assets of the firm, is responsible for their debts, and which the special partner cannot withdraw while there is a creditor unpaid, or during the continuance of the partnership. The 15th section of the Act of 1836 provides: "No part of the sum which any special partner shall have contributed to the capital stock shall be liable for any debts previously contracted by the general partners; nor shall any part of such sum be withdrawn by him, or paid or transferred to him in the shape of dividends, profits or otherwise, at any time during the continuance of the partnership." It is too clear for argument under this section that the special partner cannot withdraw his capital during the partnership, even with the consent of the general partners. It is a fund, set apart by the Act for the benefit of the creditors, and to some extent partakes of the nature of a trust. I do not of course mean a technical trust, which would require it to be invested and so held, but a trust in the sense that neither the special nor the general partners can lay their hands upon it except for the purposes for which it was created. It may be used in the business, for it was contributed for that purpose, but it cannot be diverted either directly or indirectly by any device whatever. Was there an attempt to divert it in this case?

The defendants contend that there was not; that the money having gone into the firm, the general partners had the right to assume Mershon's liability and confess the judgments referred to. ●

It is settled that where a partner borrows money to put into his firm as his quota of capital, the firm is not liable therefor, although the money actually goes into the firm business: McNaughton's Appeal, 5 Out., 550. It was held in Siegel *v.* Chidsey, 4 Casey, 279, that where money was obtained on the personal credit of a member of the firm, and the money went into the firm and was used for its exclusive benefit, though this would not make the firm liable to the creditor, yet it would be a good consideration to support the subsequent promise of the firm to pay the debt; and a judgment confessed on such assumption was not fraudulent as to creditors. In that case the fact was that the loan though made to one member of the firm, was in reality a loan to the firm, and the money was received by them and used in their business. The same doctrine was held in the subsequent case of Walker *v.* The Marine Bank, 2 Out., 574, upon a similar state of facts, SHARSWOOD, C. J., saying: "It is certainly true that if there was no debt from the firm to the plaintiff, at the time of the giving of the note, if they had never received any consideration, they had no right to create a debt by voluntarily assuming the debt of one of the members so as to be good against their creditors. But there were facts in the case which showed that they were morally bound for the debt. They had received the money. It had entered into the business of the firm, made their purchases, paid their debts, and in equity and good conscience the plaintiff stood upon as fair a platform as other creditors who had sold them goods or advanced them money."

No argument is needed to show that when one member of a firm borrows money in his individual name, but in reality for the use of his firm, and the money actually goes into the firm assets, that the firm may assume the liability and confess a judgment therefor. The consideration for such assumption is the moral liability, and the general creditor has no grounds of complaint for the reason that the assets of the firm are increased to the precise extent of the money borrowed.

This principle, however, has no application to the case in hand. The firm of Gruber, Hoopes & Co. owed no debt to either of these ladies, nor were the general partners under any moral obligation to make good the money which Mershon, the special partner, had borrowed of them. Their affidavits show that they loaned the money to Mershon for the very purpose of making up the capital which he was to put in the firm as

a special partner, and they knew, or were chargeable with knowledge, that when once put in it could not be withdrawn by Mershon, even with the consent of the general partners, during the continuance of the partnership. That the firm used the money in their business makes no difference. They had the right to do so ; it was placed there for that purpose. The capital put into a firm by a special partner under the Act of 1836 has no analogy to a sum of money borrowed by one member of a firm in an ordinary partnership and placed by him in the firm for their joint benefit. The practical effect of sustaining the contention of the defendants would be to allow the special partner, with the connivance of the general partners, to withdraw his capital from the grasp of creditors whenever the condition of the firm placed it in peril. It would only be necessary for the general partners to assume the debt as soon as the firm is created, when it is of course solvent, confess a judgment therefor to be laid quietly aside until insolvency occurs, and then sweep the assets into the pocket of the special partner, or those who have furnished him with the capital, by means of an execution. If such practices were allowed in cases of limited partnerships it would open the door to all manner of frauds and devices to evade the Act of 1836, by withdrawing the capital contributed by the special partners from the grasp of creditors.

We are of opinion that the judgments and executions of the appellees are void as against creditors, not only because they have no consideration to support them, but also for the further reason that they are against public policy, and contravene the Act of 1836. While no actual fraud may have been intended they are a legal fraud. Their effect is to withdraw the capital contributed by the special partner. The judgments are no doubt good against the general partners individually, but they cannot come in upon the partnership property until the partnership creditors are paid.

The court below having refused the injunction prayed for, the sheriff proceeded with his executions, but retained the fund produced thereby to await the final determination of the case. The application for a receiver, therefore, becomes of no importance. The question has been turned into one of distribution. In making such distribution the fund must go to the creditors of the firm as they shall appear to be entitled, excluding the appellees, Mrs. Mershon and Mrs. Cadwallader.

The decree is reversed at the costs of the appellees, and it is ordered that the record be remitted for further proceedings in accordance with this opinion.