## G. W. C. James *v.* T. C. Vanzandt et al. Jacob Brodbeck's Appeal.

*Partnership—Firm and individual liabilities.*

As against its creditors a copartnership cannot assume the individual liabilities of one of its members, for which it is neither legally nor morally responsible, and apply the partnership property to their payment.

A partnership agreement provided that, upon the dissolution of the firm, one of the partners named should be repaid his contribution before his copartners received anything, and his copartners personally guaranteed that he should receive the amount invested by him in the business. It appeared that the partner so named had no money of his own, but that his contribution had been advanced by his father to enable him to become a partner. The father testified that the provision had been inserted in the articles to guarantee him the return of the money. The son testified that it was understood that his father should be protected through him, the son, if any misfortune should occur to the business. *Held* that the evidence was insufficient to render the firm liable to the father.

Argued April 19, 1894. Appeal, No. 447, Jan. T., 1894, from order of C. P. Huntingdon Co., Dec. T., 1893, sustaining exceptions to auditor's report. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and FELL, JJ. Reversed.

Exceptions to report of John D. Dorris, Esq., auditor, distributing fund raised by sheriff's sale of partnership property. Before FURST, P. J.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was decree, reversing report of auditor and awarding distribution to plaintiff, quoting decree.

*John M. Bailey,* for appellant.—The judgment note given by Vanzandt to James without the assent of Enyeart, one of

172 JAMES v. VANZANDT et al.  BRODBECK'S APPEAL.

· Arguments—Opinion of the Court.  [163 Pa.

the partners, was without consideration and void as to credit-
ors: Walker v. Bank, 98 Pa. 574; McNaughton's Ap., 101
Pa. 550; Coffin's Ap., 106 Pa. 280; Coover's Ap., 29 Pa. 9.

*Hayes H. Waite, P. M. Lytle* with him, for appellee.—The
$4,000 advanced by plaintiff was a debt of the firm of Van-
zandt, Enyeart & James, and so treated by all the members
from the time they received it.

A partner may bind his copartner by a contract under seal
in the name of the firm in the course of its business, provided
the copartner assents to the contract previously to its execu-
tion, and this assent may be by parol: Bond v. Aitkin, 6 W. &
S. 165; Johns v. Battin, 30 Pa. 84.

Plaintiff's claim being a firm debt, any one of the members
had the right to confess a judgment to secure him: Clark v.
Ry., 136 Pa. 408; Siegel v. Chidsey, 28 Pa. 279; Walker v.
Bank, 98 Pa. 579; Coffin's Ap., 106 Pa. 286.

Even a moral obligation on the part of the copartnership to
pay the debt of one of the partners is held sufficient to sustain
a judgment so confessed: Walker v. Bank, 98 Pa. 574.

It is the equity among the parties themselves which governs
in the distribution of partnership assets, and not the mere rights
of creditors: Snodgrass's Ap., 13 Pa. 470; Frow, Jacobs &
Co.'s Est., 73 Pa. 466.

OPINION BY MR. JUSTICE FELL, July 12, 1894:

The fund in controversy was created by a sheriff's sale of
the partnership property of Vanzandt, Enyeart & James, and
the question before the auditor was whether the plaintiff's
judgment should participate in the distribution. A careful
examination of the testimony has led us to the belief that the
finding of the learned auditor was correct, and that his report
should have been confirmed.

In 1891 George R. James became a member of the firm of
Vanzandt, Enyeart & James. Articles of copartnership were
entered into, in which the contribution of $4,000 by George
R. James was acknowledged, and by which the entire co-
partnership property of Vanzandt and Enyeart, estimated at
$8,000, was transferred to the new firm, and the copartners
held equal interests. It was agreed by article 7th that, in the

JAMES *v.* VANZANDT et al.   BRODBECK'S APPEAL.   173

1894.]                            Opinion of the Court.

event of the dissolution of the firm, George R. James, after the payment of all debts, should be repaid his contribution to the capital before his copartners received anything; and by article 9th his copartners personally guaranteed that upon the dissolution of the partnership he should receive the amount invested by him in the business.

The money put into the business by George R. James was advanced by his father, the plaintiff, and upon the failure of the firm in 1893 judgment was confessed to him by one of the copartners, Vanzandt, with the knowledge of James but without the concurrence of Enyeart, who at the audit joined with the creditors in opposing its payment. The question before the auditor was whether the debt due the plaintiff was a partnership debt or the debt of the plaintiff's son, Geo. R. James.

It was not in dispute that the money advanced by the plaintiff was to enable his son to become a member of the firm, nor that it was used by the son to pay his share of the capital. No obligation of the firm was taken, nor was any payment on account of principal or interest at any time demanded of or made by it. Vanzandt and Enyeart were in need of more capital. To secure it they took an additional partner, and as an inducement to him they agreed that upon the dissolution of the new firm his contribution to the capital should first be repaid after the payment of the firm debts; and they further assumed a personal obligation to indemnify him to the extent of his contribution to the capital in the event of insolvency.

This was the whole agreement, as it appears from the testimony and the articles of copartnership. Doubtless their purpose in making this concession was to induce the plaintiff to furnish the money to enable his son to enter the firm; but the agreement was made with Geo. R. James, and not with the plaintiff. The plaintiff testified: " My son by this paper became a member of the firm. It was then called Vanzandt, Enyeart & James. He was to put in $4,000 as his share of the capital. These checks of mine represent $4,000. My son put no money in except these checks I gave him. He did not have any money. These checks were the very money he was to put in. . . . The money I advanced was put there to get my son an interest in the firm. There was nothing said about the interest the firm was to pay me for the use of the money.

174 JAMES *v.* VANZANDT et al. BRODBECK'S APPEAL.

Opinion of the Court. [163 Pa.

The money was to be for the benefit of my son. All the interest he was to receive was a share of the profits." It is true he says in the course of his testimony: "I furnished him that amount of money as a loan to the firm. . . . The money I advanced was not to my son individually, but to the new firm." But the explanation of the whole matter is found in his further statement: "It was, I think, the understanding between Vanzandt, Enyeart and myself that the 9th section was to be the guarantee to me for the return of the money." And in the testimony of his son: "The 9th section of the agreement was understood by me and my father that my father should be protected through me if anything should occur either directly to him or through me by the firm of Vanzandt, Enyeart & James."

The testimony as a whole leaves no doubt as to the understanding and the agreement made at the time. The plaintiff loaned his son $4,000 to enable him to enter the copartnership, and this money was contributed by Geo. R. James as his portion of the capital to make him an equal partner. Before advancing the money to his son the plaintiff insisted on the articles of copartnership, which were approved and retained by him, and secured him as far as possible in carrying out the intention of the parties by providing for the return of his son's contribution to the capital.

This however was not an agreement between the plaintiff and the firm, but between two of its members and the plaintiff's son. He neither was nor could have been a party to this agreement, and any protection which it was intended to afford him was only incidental and through his son.

With this judgment of the facts there is no difficulty in the application of legal principles. As against its creditors a copartnership cannot assume the individual liabilities of one of its members, for which it is neither legally nor morally responsible, and apply the partnership property to their payment. In Siegel v. Chidsey, 28 Pa. 279, which is relied upon by the appellee, the money was borrowed by one member of the firm for the use of the firm, and used by it, and the debt assumed before failure; and it was there held that while the firm was not originally liable there was a good consideration to support its subsequent promise to pay. To the same effect is Walker v. Marine Nat. Bank, 98 Pa. 574.

JAMES v. VANZANDT et al. BRODBECK'S APPEAL. 175

1894.]                        Opinion of the Court.

The facts in this case closely resemble those in McNaughten's Appeal, 101 Pa. 550, in which one of the copartners had borrowed his share of the capital of the bank, plaintiff, and afterward confessed judgment therefor. In the opinion the present Chief Justice said: " It is suggested that the money of the bank was used in paying for the original stock of merchandise with which the firm commenced business, and in replenishing the same from time to time; and therefore by some species of equity the firm should be liable for the money loaned to one of the partners on the individual credit of himself and his indorser. It is a mistake to suppose that any such ground of liability is tenable under the facts of this case." The same doctrine is held in Coffin's Appeal, 106 Pa. 280.

The decree is reversed at the cost of the appellee, and it is now adjudged and decreed that the auditor's report be confirmed, and the fund distributed in accordance therewith.