## A. W. E. BAUCK v. J. M. SWAN ET UX.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued October 29, 1891—Decided January 4, 1892.
[To be reported.]

1. Under § 1, act of June 3, 1887, P. L. 332, a married woman has the right to sell her land, with the same effect as if she were a feme-sole, except with the restriction that her title cannot be conveyed without the joinder of her husband in the deed. And her right to sell includes the right to employ an agent to sell for her, and to make a contract fixing his compensation.

2. The case of Real Estate Inv. Co. v. Roop, 132 Pa. 496, decides that general contracting power was not given to married women by the act

of 1887, and therefore a married woman cannot confess a judgment for borrowed money; but that case has no application to the question of her power to bind herself and her estate by employing an agent to sell her land for her.

3. When the husband of a married woman employed a real-estate broker to effect a sale of her land, at a fixed compensation, and the broker procured a purchaser to whom the land was afterwards conveyed, the plaintiff was properly allowed to recover the compensation fixed by his agreement with the husband, the jury having found that the wife had ratified it with full knowledge of its terms.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 143 October Term 1891, Sup. Ct.; court below, No. 164 January Term 1891, C. P. No. 2.

On November 4, 1889, there was entered in the court below, by appeal from the judgment of an alderman, an action brought by A. W. E. Bauck against James M. Swan and Isabella A. Swan, his wife. The plaintiff filed a statement of claim averring, in substance, that Isabella A. Swan, through her husband, James M. Swan, made a contract with the plaintiff to pay him three hundred dollars, for his services as a broker in procuring a purchaser for certain real estate belonging to her; that the plaintiff rendered such services, procuring a purchaser to whom a sale was made and consummated by conveyance, but that said Isabella A. Swan had not paid said sum of three hundred dollars, or any part thereof. Issue.

At the trial, on January 8, 1891, testimony for the plaintiff tended to show that he was employed by James M. Swan to secure a purchaser for a tract of land belonging to his wife, containing thirty-four acres, or for any part thereof not less than ten acres in area; that it was agreed between them that if he succeeded in effecting a sale of the western end of the place, the plaintiff should have as his compensation whatever he could get over and above one hundred dollars per acre; that the plaintiff made arrangements for the sale of sixteen acres of the western end of the land, to one Henry Wesner, for the price of $2,150; that he reported the sale to Mr. Swan, and at the same time stated that he would accept three hundred dollars in full of his compensation, in view of the fact that the sale was a better one than had been expected, and this proposal was acceded

Statement of Facts.

to; that the plaintiff at Mr. Swan's request prepared a draft of an agreement for the sale of the sixteen acres to Wesner, and gave it to Mr. Swan in order that he might submit it to his wife; that Mr. Swan reported to the plaintiff, on the next day, that his wife was satisfied, and directed plaintiff to produce Mr. Wesner for the purpose of having the contract executed, and on the same day Wesner and his wife came for that purpose to Mr. Swan's place of business; that Wesner was satisfied with the written agreement that had been prepared, but its execution was postponed because Mr. Swan stated that his wife was out of town, or was not there, that day; that subsequent delays took place, the reason given therefor by Mr. Swan being the necessity of making some arrangement with the tenant of the premises for their vacation; and that finally, Mr. Swan told the plaintiff that he and his wife had concluded not to sell, but to hold the land for a few years longer, and refused to pay the plaintiff anything for his services; whereupon the plaintiff went to see Mrs. Swan, whom he had not met previously. The plaintiff in his testimony described his interview with Mrs. Swan, and subsequent events, as follows:

"I found Mrs. Swan sick in bed. I introduced myself to Mrs. Swan, told her my business, and I asked Mrs. Swan if she knew that her husband had offered the property for sale. 'Yes.' Told her that I was sent by her nephew, Mr. George Quaill, attorney here, to Mr. Swan first; that I had made certain arrangements, as I stated here, with Mr. Swan. I asked Mrs. Swan if she knew of these arrangements. 'Yes.' I asked Mrs Swan, then, if she knew of this agreement I had drawn up. 'Yes.' If she had read that agreement. 'Yes.' She said she had no fault to find; she said one thousand six hundred dollars wasn't enough for sixteen acres. I says, "Mrs. Swan that is your proposition; you get more, you know in the agreement you get more than what you asked for the property. 'Well,' she says, 'I don't know about that mortgage there.' Mr. Swan had told me that they owed the bank in Allegheny two thousand dollars, and she didn't understand the arrangement about the mortgage in this agreement. I explained to Mrs. Swan, as I understood the arrangement Mr. Swan had made with the bank in regard to paying the mortgage, that the mortgage on the sixteen acres the bank was to get as collateral.

' Oh ! that is all right; I didn't understand it that way,' said Mrs. Swan.'"

By Mr. Stewart: " Q. Then how was the mortgage to be paid off? A. The agreement, as I had it at first, was eight hundred dollars cash, a mortgage for one thousand three hundred and fifty dollars for five years, secured by a mortgage on the sixteen acres. Out of the eight hundred dollars I was to get three hundred dollars, Mrs. Swan five hundred dollars, and, as Mr. Swan explained to me, the bank would take this one thousand three hundred and fifty dollar mortgage as collateral security for the release of the sixteen acres. Q. That is, the release of their mortgage on the sixteen acres? A. Yes, sir. Then Mrs. Swan went to say how this wasn't enough. I told Mrs. Swan, told her her husband had all at once changed his notion, said he wasn't going to make the sale; that I wanted my three hundred dollars. Mrs. Swan seemed kind of miffed about it, and says, ' Why I am perfectly willing to sell; I will see the tenant myself; I will arrange that myself.' I says, all right, Mrs Swan; all I want to see is I want this agreement carried out, and that I claim my three hundred dollars, and if I don't get it I shall let the court decide it; and I left. I saw Wesners. Told Wesners what had occurred; told them to go and see Mrs. Swan and see what they got to say. I saw Wesners afterwards again. They told me they had seen Mrs. Swan. And I kept on seeing them or they saw me, till finally things were settled up, and they had bought the land on the terms as I had made them, with the difference that they themselves raised the mortgage of one thousand two hundred dollars through Black & Baird, and Swans only took a second mortgage of one hundred and fifty dollars for one year. Swans sold it on the same terms that I did. Then I asked my attorney to write to Mrs. Swan and ask for my money, and answer came back that Mrs. Swan refused to pay it."

Testimony for the defendants was to the effect that the plaintiff was not employed to sell the land, and that Mr. Swan had no authority from his wife to employ any one for that purpose; that the plaintiff in the interviews he had with Mr. Swan appeared to represent the proposed purchaser; that the plaintiff, on behalf of Wesner, submitted to Mr. Swan a proposition to buy with a draft of a proposed contract, which when

shown to Mrs. Swan she at once rejected; that she afterwards made a contract herself with Wesner for the sale of the land to him; and that she had never heard of the plaintiff until he came to her and demanded three hundred dollars after she had sold to Wesner.

The testimony being closed, the court, MAGEE, J., submitted to the jury the question whether there was a contract between the plaintiff and Mrs. Swan for his services in the sale of her property and for the payment of the compensation claimed by the plaintiff, and answered a point presented by the defendants as follows:·

The defendants request the court to charge:

1. Under all the evidence, the verdict of the jury should be for defendants.

Answer: The point is refused.[1]

—The jury returned a verdict for the plaintiff for $300. A new trial having been moved for, the court, on February 28, 1891, made the following order:

February 28, 1891, it is ordered that unless defendants within thirty days tender the sum of five per cent commission on the sum of $2,150, the amount of the sale, with interest from the date of sale and costs of suit, new trial will be refused. If such tender be made and plaintiff refuse to accept, new trial will be granted.

—The defendants having failed to tender or offer to pay the amount specified in the foregoing order, the court, on April 2, 1891, made an order refusing a new trial. Judgment having been entered on the verdict, the defendants took this appeal, assigning for error:

1. The refusal of defendants' point.[1]

*Mr. George H. Quaill*, for the appellants:

1. The alleged contract with the plaintiff did not relate to any business in which Mrs. Swan was engaged, nor was it for necessaries, nor for the use, enjoyment or improvement of her real estate. It was therefore not binding on her under the act of June 3, 1887, P. L. 332; Real Estate Inv. Co. v. Roop, 132 Pa. 496. The contract here is for the sale, not for the improvement of her estate; and her husband could not bind her, unless authorized by an instrument duly acknowledged in the manner

required by law: Stoops v. Blackford, 27 Pa. 213; Roseburgh v. Sterling, 27 Pa. 292.

2. The testimony shows that she never employed the plaintiff, and never gave her husband authority to do so; and a broker has no right to recover for voluntary services, rendered without a previous employment: Mayer v. Rhoads, 135 Pa. 601; Keys v. Johnson, 68 Pa. 42; Smith v. Milligan, 43 Pa. 107; Inslee v. Jones, Bright. 76. The plaintiff's claim is an unconscionable and unjust one; and the court below so regarded it, as is shown by the order made on the motion for a new trial. The only ground upon which there could be a recovery, would be that there was a ratification by Mrs. Swan of the agreement to pay the plaintiff three hundred dollars, alleged to have been made by her husband. Aside from the consideration that she is a married woman, the testimony of the plaintiff as to what was said in the conversation between himself and her, does not exhibit a ratification of such a contract.

3. Moreover, there can be no binding ratification unless the party has been informed of what has been done, and it is not shown that the terms of the alleged contract with the plaintiff were communicated to her: Moore v. Patterson, 28 Pa. 505; Twelfth St. Market Co. v. Jackson, 102 Pa. 269; Zoebisch v. Rauch, 133 Pa. 532. By merely accepting the benefits of his services, she did not ratify his employment: Twelfth St. Market Co. v. Jackson, 102 Pa. 269; Mayer v. Rhoads, 135 Pa. 601. At the very best, the plaintiff could recover only on a quantum meruit, in support of which there was neither allegation in the statement of claim nor proof at the trial. The defendant was not obliged to acquiesce in the action of the court upon the motion for a new trial, fixing the amount of plaintiff's compensation on the basis of a quantum meruit: Linton v. Vogel, 98 Pa. 457. Moreover, the statement of claim does not aver that the contract sued on was a contract for necessaries, or for any of the purposes specified in the act of June 3, 1887, P. L. 332; and such averment was essential: Fenn v. Early, 113 Pa. 268.

*Mr. R. E. Stewart*, for the appellee

OPINION, MR. JUSTICE GREEN

The first section of the act of June 3, 1887, P. L. 332, pro-

vides that "every married woman shall have the same right to acquire, hold, possess, improve, control, use, or dispose of her property, real and personal, in possession and expectancy, in the same manner as if she were a feme-sole, without the intervention of any trustee, and with all the rights and liabilities incident thereto except as herein provided, as if she were not married." That this law gives to married women the right to sell their real estate with the same effect as if they were femessole, except with the restriction contained in the proviso clause of the section requiring the husband to join in the deed, cannot be doubted. The case of Real Estate Inv. Co. v. Roop, 132 Pa. 496, decides that general contracting power was not given to married women by the act of 1887, and therefore she could not confess a judgment for borrowed money. But that case did not raise any question as to the right of a married woman to dispose of her land, and therefore it is not applicable to the question raised here.

The claim of the plaintiff is based upon a contract alleged by him to have been made with the husband of Mrs. Swan, by her authority, and ratified by her after full knowledge of its terms and conditions, by which he was engaged to sell certain land of Mrs. Swan upon certain terms as to his compensation. The plaintiff testified fully as to the contract, and its ratification by Mrs. Swan, and gave corroborating testimony by the purchaser and others. Both of the defendants denied the making of such a contract, and its ratification by Mrs. Swan, and this raised a question of fact which was very carefully and patiently submitted to the jury by the learned court below, and the jury found a verdict for the plaintiff for the full amount of his claim. The verdict accredited the witnesses for the plaintiff, and discredited the witnesses for the defence; and, as that is a function which it is the exclusive province of the jury to administer, the courts are bound by their action. There was sufficient testimony to support the verdict, and therefore we cannot sustain the only assignment of error that is brought before us.

The question whether the defendant Mrs. Swan, as a married woman, had the lawful power to make a contract for the sale of her real estate by an agent, seems to be included in the question whether she could sell her land at all. We are clear

Syllabus.

that she could sell her land of her own volition, and it seems to us she could therefore lawfully employ an agent to sell it for her. Her power to sell is as large as if she were a feme-sole, and of course if she were a feme-sole she would have the power to employ an agent to make the sale. The act not only gives her the " right to acquire, hold, possess, improve, control, use, or dispose of her property, real and personal, in the same manner as if she were a feme-sole," but also " all the rights and liabilities incident thereto, . . . . as if she were not married." We cannot hold that she has not the power to sell her land as if she were unmarried, without refusing to enforce the plain meaning and intent of the act of 1887, and that we have neither the right nor the desire to do.

Judgment affirmed.

Argued October 29, 1891—Decided January 4, 1892.