## Spotts' Estate.    Beetem's Appeal.

|156  281|
|181  109|

156      281
26 SC ²558
156      281
31 SC ²507

*Equitable assignment—Set-off—Decedents' estates.*

Decedent had an open account with a firm of which claimant was a member. She was a creditor on this account for $661.50, and a debtor for $173.61. Claimant was at the time an indorser on her note for $450, and she desired him to assume the further liability of indorsing another note for $2,000. This he agreed to do in consideration of her agreeing that $450 of her credit should he offset by the note for that amount, which. he undertook that the firm should pay. This arrangement was carried out. Claimant indorsed the second note, and the firm paid the first note. *Held,* that this was an equitable assignment of $450 of her claim on the firm to claimant, and that it made no difference that the first note was paid after her death.

*Married women—Loan—Application of funds.*

A person who lends money to a married woman is not bound to see that she actually applies the money to use in business.

*Evidence—Witness—Decedents' estates.*

Where a husband has borrowed money on a bond with a surety, and has loaned the money thus borrowed to his wife, the surety is a competent witness against the wife's estate, after her death, to establish the husband's right to the fund.

Argued April 24, 1893. Appeal, No. 85, July T., 1892, by George S. Beetem, a creditor, from decree of O. C. Cumberland Co., distributing estate of Catharine Spotts, deceased. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Exceptions to report of auditor distributing decedent's estate.

Before the auditor, J. M. Weakley, Esq., the administrator claimed credit for $450, under circumstances stated in the opinion of the Supreme Court. The auditor disallowed the claim. [1]

The Carlisle Deposit Bank claimed payment of an accommodation note of the decedent for $1,775, indorsed by W. A. Coffey and discounted by claimant. The auditor found that Mrs. Spotts was engaged in the brick business, and reported on the bank's claim as follows:

" The proceeds of the Coffey note were credited to her account, and were paid out on her checks. It does not appear clearly to whom Mrs. Spotts paid this money—the greater part of that credited to her account seems to have been drawn by Mrs. Spotts on her own checks.

" There is no evidence that this money was applied specifically to the purchase of materials or payment of employees, either in the brick-making business or in the improvement of the real estate devised to her in trust by her father. It is proved however that, at the time she received these discounts, she was engaged in manufacturing brick, and that in the years 1888 and 1889 she made improvements to her real estate. On these facts, in the absence of any evidence showing any other application of these moneys, the auditor finds that Mrs. Spotts received the proceeds of these notes, and applied them to the carrying on of her business and the improvement of her property."

The auditor allowed the claims. [2]

John Spotts, decedent's husband, presented a claim for $1,000. The auditor reported on the claim as follows:

" This is a claim for one thousand dollars with interest from April 1, 1891, for money loaned by John Spotts to the decedent, April, 1885. Mrs. Spotts sent her husband to Mr. J. Herman Bosler about April 1, 1885, to borrow one thousand dollars for her use on the joint note of herself and her husband. Mr.

Bosler declined loaning on the note of a married woman, but said he would loan the money to John Spotts, if his father, Daniel Spotts, would become his surety. They signed the bond and Mr. Bosler gave John Spotts the money. There is no direct proof that John Spotts turned this money over to his wife, but the evidence of Daniel Spotts and Samuel Wetzel proves that she admitted several times that she had received the money, used it in her brick-making, and that she intended to pay off the judgment of Mr. Bosler against her husband and Daniel Spotts. The interest on this judgment was regularly paid to Mr. Bosler through John Spotts until April 1, 1891.

" At two of these payments the interest was settled by crediting accounts, which Mrs. Spotts had against Mr. Bosler for brick he had purchased from her. At the time the money was borrowed from Mr. Bosler, Mrs. Spotts was engaged in manufacturing brick, at the brickyard property which she took under the devise in her father's will."

The auditor allowed the claim. [3]

Exceptions to the auditor's report were overruled by the court, SADLER, P. J., and a decree entered accordingly.

*Errors assigned* were (1) refusing the credit of $450 claimed by appellant; (2) in allowing the claim of the Carlisle Deposit Bank, and (3) in allowing the claim of John Spotts.

*J. W. Wetzel, J. W. Eckels* with him, for appellant, cited: Real Estate Co. v. Roop, 132 Pa. 496; Milligan v. Phipps, 153 Pa. 208; Koechling v. Henkel, 144 Pa. 215.

*M. C. Herman*, for appellee, cited: Dickson v. McGraw, 151 Pa. 98; Gr. Ev. §§ 389, 390.

*John Hays*, for Carlisle Deposit Bank.

OPINION BY MR. JUSTICE MITCHELL, July 19, 1893:

Taking the facts as the auditor reports them they show that Mrs. Spotts had an open account with Beetem & Co. on which she was a creditor for $661.50 and a debtor for $173.61, leaving a net credit to her of $487.89. G. S. Beetem, one of the firm of Beetem & Co., was at that time indorser on her note for

$450, and she desired him to assume the further liability of indorsing another note for $2,000. This he agreed to do in consideration of her agreement that $450 of her credit should be offset by the note for that amount which he undertook that the firm should pay. This arrangement was carried out. Appellant indorsed the second note, and when the first note came due his firm paid it. This was in law an equitable assignment of so much of her claim to Beetem. The only party who could object to it was the firm, and they ratified it by payment of the note. It makes no difference that this payment was after her death. She received the consideration, the indorsement of the new note and the assumption of the other, and neither she nor her creditors could avoid performance of her part of the bargain. Her credit in the mutual account was from that time reduced by that amount, and if she had sued upon her claim for bricks, during the running of the note, she could not have recovered more than the balance after giving the credit for $450. See Chase v. Petroleum Bank, 66 Pa. 169. The credit of $450 claimed by appellant should have been allowed.

The second assignment of error cannot be sustained. Mrs. Spotts was carrying on a somewhat extended business which required money. To hold, as is claimed, that one who lends a married woman money, by discounting her note or otherwise, must see that she actually applies it to use in her business, would be going back to that state of limited rights of property and contract which it was the object of the Married Persons Property Act of 1887 to put an end to. The auditor reports that her notes were discounted by the bank and she received the money, but that "there is no evidence which proves directly what she did with the proceeds." It is not necessary that there should be. One who presents a money obligation of a married woman, since the act of 1887, has made out a prima facie case, which can only be defeated by showing that the contract is one of the kinds prohibited by that act. The presumption even in case of a judgment, is that it is regular and valid. "So general is her power to contract now, that her inability is the exception, rather than the rule:" Koechling v. Henkel, 144 Pa. 215. "With the exception of such disabilities as are particularly specified in or contemplated by the provisions of the act, they (married women) are emancipated from

their common law disabilities, and authorized to incur contract liabilities, etc., as if they were femes sole:" Adams v. Grey, 154 Pa. 258. And whether the money is necessary, or the obligation wisely incurred for the object in view, is solely for her to decide: Milligan v. Phipps, 153 Pa. 208.

The third assignment of error is to a question of fact, the allowance of the claim of John Spotts, and does not really raise the question argued under it, the competency of Daniel Spotts as a witness. There was however no error in admitting him. He was merely surety for John Spotts for the money that was borrowed. He had no direct interest in the result of this litigation. The most that could be said was that in a certain contingency he would become a creditor of John. That would not make him incompetent even at common law: Dickson v. McGraw, 151 Pa. 98.

Decree reversed and record remitted for restatement of account in accordance with this opinion.