## Andrew Stephan *v.* Mary Hudock, Appellant.

*Married women—Contractual capacity under Act of 1887.*

Since the passage of the Act of June 3, 1887, P. L. 322, a married woman's confession of judgment is presumably valid. It is no longer necessary to state on the record the facts which before the act were necessary to the judgment's validity.

Formerly her capacity to contract was exceptional and her disability general; now her disability is exceptional and her capacity general; the burden is on her, when she seeks to avoid a contract, to bring it within one of the few exceptions.

*Practice, C. P.—Opening judgment—Judge sits as chancellor.*

The judge to whom an application to open a judgment is made acts as a chancellor; it is his duty to weigh the testimony; and he is not required in every case of conflicting evidence to send the case to the jury; and upon appeal the appellate court will only see that his discretion has been properly exercised.

*Married women—Liability on an obligation—Burden of proof.*

One who presents a money obligation of a married woman since the act of 1887 has made out a prima facie case which can only be defeated by showing that the contract is one of the kinds prohibited by the act. The presumption even in the case of a judgment is that it is regular and valid. The fact that a husband and wife signed a judgment note does not raise the presumption that the wife signed as a surety; and the allegation of the wife resting upon her unsupported testimony, which is opposed by the corroborated testimony of the plaintiff, that she did sign as surety, is not sufficient to compel a chancellor to open a judgment against her.

Argued Jan. 11, 1897. Appeal, No. 15, Jan. T., 1897, by defendant, from order of C. P. Luzerne County, June T., 1893, No. 95, discharging rule to open judgment. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Rule to show cause why judgment should not be opened and Mary Hudock let into a defense. Before LYNCH, J.

The facts sufficiently appear in the opinion of the court.

*Error assigned* was refusal to open judgment as to Mary Hudock.

*G. L. Halsey* and *Chas. Orion Stroh*, for appellant.—Mary Hudock being a married women and not engaged in any trade or business when the money was loaned, and not given for necessaries, nor for the use, enjoyment and improvement of her separate estate, sufficiently proves that the execution of this note in question is not such an obligation as the act of June 3, 1887, authorizes. It was not given for any of the three statutory obligations: Building & Loan Assn. v. Fritz, 152 Pa. 224; 31 W. N. C., 330; Investment Co. v. Roop, 132 Pa. 496; 25 W. N. C. 380; Turner v. Laubagh, 6 Kulp. 368.

All the decisions since the act of 1887 of the Supreme Court wherein the judgment notes of a married woman are held to be valid are cases where they were engaged in a trade or business, or the notes were given in the management of their separate estates or for necessaries.

*A. C. Campbell*, with him *John R. Sharpless*, for appellee.— The authorities which were applicable to questions arising before the passage of the act of 1887 are entirely inapplicable now. The judgment of a married woman which was then presumably void is now presumably valid: Abell v. Chaffee, 154 Pa. 254; Adams v. Grey, 154 Pa. 258; McNeal v. McNeal, 161 Pa. 109.

To rebut the presumption of the validity of the note, the defendant depends entirely upon the uncorroborated testimony of the defendant.

The refusal of the court below to open a judgment when the testimony is conflicting will not be disturbed by the Supreme Court: Range v. Culbertson, 168 Pa. 324; Wernet's Appeal, 91 Pa. 319; Massey v. Blair, 176 Pa. 34.

OPINION BY RICE, P. J., April 19, 1897:

On December 18, 1891, the defendant and her husband gave their joint promissory note, with confession of judgment, to the

plaintiff, for a loan of $400. Judgment was entered thereon on May 18, 1893, and on November 29, 1895, she applied for and obtained a rule to show cause why the judgment should not be opened as to her, and she let into a defense. She testified, in support of her application, that her husband borrowed the money for which the note was given; that she did not get any of it, and that her husband used part of it to pay on a contract for the erection of a house for him. The contractor testified that on December 19 (the day after the loan was made) John Hudock paid him $250. What became of the balance of the money—assuming that this was part of the money borrowed —does not appear.

The plaintiff, on the other hand, testified that the defendant and her husband both came and asked for the loan, but that she "asked me more than John did. She said I need not be afraid; that she would pay me back before the year was up. She said she wanted the money to pay a bill to some one at Shepton. She said if I would help her along to pay that bill she would pay interest, and before the year was up she would pay me the money. I did not want to pay the money until both came in and both signed their name." The justice of the peace who drew up the note, John Hussman, who was present, and the plaintiff, all testified that the money was delivered to her, and the latter two, that she took it away from the office, where the note was signed. What became of it afterwards, of course they could not say. Hussman testified that after the loan was made the defendant said: "God shall help me if I shall cheat you out of this." The plaintiff and his wife testified that about two years after the loan was made the defendant paid $32.00 on account of interest.

Since the passage of the act of June 3, 1887, a married woman's confession of judgment is presumably valid. It is no longer necessary to set out on the record the facts which before the act were necessary to the judgment's validity. "Formerly her capacity to contract was exceptional, and her disability general, now the disability is exceptional and her capacity general; the burden is on her, when she seeks to avoid the contract, to bring it within one of the few exceptions:" Patrick v. Smith, 165 Pa. 526. One of the exceptions is the contract of suretyship, and if the defendant signed this note as surety for her husband

the judgment should have been opened.   But the burden of proof was upon her; the fact that her husband signed the note with her does not raise the presumption that she signed as surety.   Therefore, her allegation to that effect rests upon her unsupported testimony and is opposed by the corroborated testimony of the plaintiff.

It is settled by a long line of decisions that the judge to whom an application to open a judgment is made acts as a chancellor; that it is his duty to weigh the testimony; that he is not required in every case of conflicting evidence to send the case to a jury; and that on appeal the appellate court will only see that his discretion has been properly exercised: Earley's Appeal, 90 Pa. 321; Hickernell's Appeal, 90 Pa. 328; Roenigk's Appeal, 2 Cent. Rep. 68; Wernet's Appeal, 91 Pa. 319; Jenkintown Nat. Bank's Appeal, 124 Pa. 337; Lomison v. Faust, 145 Pa. 8; Com. v. Titman, 148 Pa. 168.   "It is difficult," said Chief Justice PAXSON, "to lay down the precise measure of proof which should move a chancellor to open a judgment. That he may not act unless there is more than an oath against oath is a familiar rule in chancery practice: " Jenkintown Nat. Bank's Appeal, supra.   If the only question in the case were, whether the loan was made to the defendant or she simply signed the note as surety for her husband, it would be impossible, in the light of the foregoing decisions, to say that the refusal to open the judgment was a clear abuse of legal discretion.

Assuming that the note was given for money borrowed by the defendant is she liable?

It was held in the case of Real Est. Inv. Co. v. Roop, 132 Pa. 496, that, subject to the restrictions specified in the provisos to sections 1 and 2, the act of 1887 confers upon a married woman the power to make three classes of contracts only, namely (*a*) in connection with a trade or business in which she is engaged, (*b*) in the management of her separate estate; (*c*) for necessaries; and the authority to execute obligations is confined to one or other of these classes.   In the following cases the facts required no departure from this construction of the act in order to sustain the contracts there in question: Bauck v. Swan, 146 Pa. 444; Walter v. Jones, 148 Pa. 589; Latrobe v. Fritz, 152 Pa. 224; Milligan v. Phipps, 153 Pa. 208; Abell v. Chaffee, 154 Pa. 254; McCormick v. Bottorf, 155 Pa. 331; McNeal v.

McNeal, 161 Pa. 109. But there is a class of cases, of which Adams v. Grey, 154 Pa. 258, is at the head, in which it seems to us a broader construction has been given to the act. In the case cited the court below struck off a judgment confessed by a married woman in part payment of furniture and household effects, and (it was alleged) in part payment for the goodwill of a house of prostitution. But it was held on appeal that there was nothing to justify either striking off or opening the judgment. The decision was put on the ground that the contract was executed by delivery of the furniture, etc., and not upon the ground that it belonged to one of the three classes mentioned in the Roop case. After a review of the provisions of the act of 1887 the present chief justice said : " With the exception of such disabilities as are particularly specified in or contemplated by the provisions of the act, they are emancipated from their common law disabilities and authorized to incur contract liabilities, etc., as if they were femes sole ; and such has been the trend of our decisions whenever questions have arisen since the passage of the act."

In Evans v. Evans, 155 Pa. 572, the issue was as to the title to a house bought by the wife of an execution defendant with money borrowed on her individual credit. " The validity of her note," said Justice GREEN, " has no place in this contest, but if it had, we have affirmed the validity of the judgment of a married woman for borrowed money, and could not well deny the validity of her promissory note for the same purpose."

A married woman may purchase land on credit, and give any kind of lawful lien upon it as security for the purchase money : Campe v. Horne, 158 Pa. 508.

She may contract to purchase real estate for the purpose of a residence for herself and family, and make herself personally liable for money borrowed to pay for it : Steffen v. Smith, 159 Pa. 207. In this case she borrowed, and gave her note for $3,200, but only $3,000 was applied to the payment of the purchase money. The court below held that she was liable for the whole sum borrowed and the judgment was affirmed.

A married woman who accepts money for safe keeping and refuses to return it when demanded, cannot take refuge behind the plea of coverture : Fullam v. Rose, 160 Pa. 47.

In an action of trespass by a married woman against a sher-

iff, for damages for the sale, as the property of her husband, of two horses claimed by her, the evidence tended to prove that, at her request, the horses were purchased by her husband to supply the place of two horses owned by her in her own right, one of which had died, and the other she had sold, and that the notes were subsequently paid by her to the holder thereof with money of her own separate estate. It was held that this evidence was sufficient to carry the case to the jury. "Instead of being strictly and narrowly exceptional, as it was under the act of 1848, her capacity to contract has practically become the general rule."

As to the duty of one who lends money to a married woman to prove that she actually applied it in her business or to some purpose connected with the use or enjoyment of her separate estate, I cannot do better than to quote the language of Justice MITCHELL in a case where this precise question arose, "To hold, as it is claimed, that one who lends a married woman money, by discounting her note or otherwise, must see that she actually applies it to use in her business, would be going back to the state of limited rights of property and contract, which it was the object of the Married Persons Property Act of 1887 to put an end to. The auditor reports that her notes were discounted by the bank and she received the money, but that 'there was no evidence which proves directly what she did with the proceeds.' It is not necessary that there should be. One who presents a money obligation of a married woman since the act of 1887, has made out a prima facie case which can only be defeated by showing that the contract is one of the kinds prohibited by the act. The presumption even in case of a judgment is that it is regular and valid:" Spott's Estate, 156 Pa. 281. See also Koechling v. Henkel, 144 Pa. 215.

In our opinion that presumption has not been overcome in the present case by the quantity of proof which made it the duty of the court, in the exercise of its discretion, to set aside or to open the judgment.

The order is affirmed and the appeal dismissed at the costs of the appellant.