# Jennie E. Dennis, Executrix of William H. Dennis, deceased, *v.* Mary C. Grove, Appellant.

*Married woman—Promissory note—Moral consideration.*

A married woman is liable if in fact a debt is hers, although it is contracted in the name of her husband.

A married woman's note given in payment of a debt contracted by her husband, but which she might legally have contracted herself, for materials bought for and used on her own farm is based on a sufficient consideration.

*Sale— Validity of, when violating act of June 28, 1879.*

Where goods offered for sale are required, by statute, on pain of a forfeiture or penalty, to be marked or branded in a certain way, the price thereof may be recovered, unless there is also an express prohibition as to the sale.

*Sales—Certificate of secretary of commonwealth—Condition precedent.*

As the certificate of the secretary of the commonwealth required by the Fertilizer Act of June 28, 1879, P. L. 180 is only obtainable at the end of each year and relates to the sales for that year, it cannot be deemed a prerequisite or condition precedent to doing business.

Argued Feb. 15, 1897. Appeal, No. 31, Feb. T., 1897, by defendant, from judgment of C. P. Union Co., Sept. T., 1892, No. 5, on verdict for plaintiff. Before WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Assumpsit on a promissory note dated Nov. 24, 1890. Before McCLURE, P. J.

The facts sufficiently appear in the opinion of the court.

Verdict and judgment for plaintiff for $160.50. Defendant appealed.

*Errors assigned* among others were (1) to the admission of the deposition of William H. Dennis: Mr. Follmer: We offer the deposition to show the consideration for which the note was given; to show the amount and kind of phosphate for which the note was given and to show where it was used, and to show that the defendant in the case has a separate estate; and to show what took place between the plaintiff and the defendant at the time the note was given.

Mr. Linn: We object that the evidence is inadmissible, the plaintiff having already shown that the original consideration

moved to Abraham Grove, the husband of the wife, and this note in suit was given by the wife for the husband's note and not for these goods, but for the note, that the plaintiff has already shown that the book account was not produced; that the original consideration did not move to Mary C. Grove, but that the consideration of this note was security for her husband for a debt that he owed before. That the evidence is immaterial to the issue trying, for the reason that under the act of assembly of the commonwealth of Pennsylvania the analysis of the phosphate must be such as is stamped upon the bag,—and it is immaterial to this issue that the testimony of the witness is that ten bags were of a lower grade than the others, for the same reason.

By the Court. The objections are overruled. The defendant excepts and bill sealed.

(3) In refusing the motion for nonsuit after the testimony was closed, which was as follows: Mr. Linn: I ask to leave— plaintiff having closed, I move that a judgment of nonsuit be entered against the plaintiff on the ground that it appears that Mr. Dennis was selling commercial fertilizers and that he sold to the defendant a fertilizer which is the sole consideration for the note given; that he has not complied with the act of assembly in regard to sellers of commercial fertilizers sold for manurial purposes, in any respect. It has been shown that he has not plainly stamped on the sack the name of the manufacturer; he has not stamped on the package the place of the manufacture; he has not stamped on the bag a true analysis of the contents, but on the contrary it has been shown that he has fraudulently and in contravention of the act of assembly stamped the part containing the potash in a form that would mislead the purchaser. Of course, the latter part is a question of evidence; I understand that, that the testimony of Dr. Frear must be submitted to the jury, for however learned the doctor may be, it is still evidence that is submitted to the jury. There is another reason why the nonsuit should be granted; that he has not complied with the second section of the act of assembly of the 28th of June, 1879, which is as follows:

" Every manufacturer or importer of commercial fertilizers, as specified in section one of this Act shall on or before the first day of August next ensuing or before offering the same for sale in this Commonwealth, file annually in the office of the Secretary

·of the ·Commonwealth an affidavit stating the amount of said fertilizer or fertilizers sold within the State during the last pre-·ceding year and if said amount be one hundred tons or less, he or they shall pay ·to the Treasurer of the State the sum of ten dollars for· each and every such article of such commercial fer-tilizer sold· within ·the state during the last preceding year, and if the said amount shall exceed one hundred tons and be less than five hundred tons, he·or they shall pay the sum of twenty dollars as aforesaid ; and if said amount shall be five hundred tons or more he or they shall pay the sum of thirty dollars as aforesaid ; if such manufacturer or manufacturers or importers shall not have made any sales within the Commonwealth during the preceding year he or they shall pay the sum of ten dollars as aforesaid.  Every such manufacturer ·or importer shall, at the same time, file with the Secretary of the Board of Agriculture a copy of the analysis required by section one of this Act, and shall be entitled to receive from the Secretary of the Common-wealth a certificate which shall be countersigned by the Secre-tary of the Board of Agriculture, showing that the provisions of this Act have been complied with."

By the Court: We will allow this case to go to the jury. ·The defendant excepts and bill sealed.

*J. M. Linn*, with him *P. B. Linn*, for appellant.—The act of 1887 does not permit a wife to become surety for the debts of her husband and such is the liability admitted to be enforced ·in this case : Investment .Co. v. Roop, 132 Pa. 496; Milligan v. Phipps, 153 Pa. 208; Patrick v. Smith, 165 Pa. 526.

The law will not lend its aid to a claim founded on its own violation.   Nor is there any distinction in this state whether the contract is malum prohibitum or malum in se : Bank & Bridge Co. v. Haldeman, 7 W. & S. 233.

An action cannot be maintained on a contract in violation of a statute : Holt v. Green, 73 Pa. 198; Thorne v. Ins. Co., 80 Pa. 15.

*Alfred Hayes*, with him *Wm. R. Follmer*, for appellee.—The act of 1887 gives married women unrestricted power to acquire real estate and to incur corresponding liabilities: Steffen v. Smith, 159 Pa. 207; Gockley v. Miller, 162 Pa. 271 ; Patrick v. Smith, 165 Pa. 526.

The judgment having been opened, the judgment note stands as plaintiff's cause of action and by putting it in evidence the plaintiff has established a prima facie case and puts the defendant to a defense: Harbaugh v. Butner, 148 Pa. 273.

There was no evidence in this case that the act of assembly referred to was not complied with and there surely can be no presumption that a misdemeanor was committed: Evans v. Hall, 45 Pa. 235.

OPINION BY WICKHAM, J., April 19, 1897:

William H. Dennis, whose executrix is the plaintiff in this action, sold to the defendant's husband a quantity of what was known as the " Read Fertilizer Co.'s Soluble Bone and Potash," and took his, the husband's note for the price thereof. The fertilizer was bought for and used on the defendant's farm, which was occupied by herself and her husband in the usual way. About six weeks after the giving of the note it was surrendered, through an arrangement made between Dennis and the Groves, and the note of Mrs. Grove, which is here in suit, was given in its place for the original debt.

At the trial several defenses were set up, three of which we are called on to consider. First, it was contended that the defendant's coverture absolved her from her obligation. Second, that the sacks containing the fertilizer were not stamped with the name of the manufacturer, the place of manufacture, and a truthful analysis, as required by the Act of June 28, 1879, P. L. 180. Third, that the plaintiff failed to produce and offer in evidence the certificate, from the secretary of the commonwealth, required by the act.

We may preface the consideration of these defenses with the remark, that if the defendant is liable, her liability must have its inception in the circumstances attending the purchase and use of the fertilizer, there being nothing in the legislation enlarging the rights and duties of married women which would authorize her to bind herself, by note, for her husband's debt pure and simple. The creditor must be able to point to some moral obligation at least, resting on the wife, in order to hold her to her promise.

Under the act of June 3, 1887, a married woman has the same rights in the management of her separate estate or business as

if she were single, but " in exercising the rights of a feme sole she must also incur the liabilities of one. She cannot have her property improved at the expense of others any more than can a single woman:" Milligan v. Phipps, 153 Pa. 208. Nor is her liability lessened by the fact that the expenditure may not have been necessary for the preservation or enjoyment of her separate estate, as, since the passage of that act, she is the sole judge of that question: Milligan v. Phipps, supra. It is no longer necessary in order to recover money loaned to a married woman to show that it was actually applied to the benefit of her estate or business. " One who presents a money obligation of a married woman, since the act of 1887, has made out a prima facie case, which can only be defeated by showing that the contract is one of the kinds prohibited by the act. The presumption even in case of a judgment is that it is regular and valid:" Spotts' Estate, 156 Pa. 281. " With the exception of such disabilities as are particularly specified in or contemplated by the act, married women are emancipated from their common law disabilities, as if they were femes sole:" Adams v. Grey, 154 Pa. 258. It is true that a judgment confessed by a married woman, to secure the payment of a debt due by her husband from which she derived no benefit, and for which she was not liable, will be opened on her application: Harris v. Reinhard, 165 Pa. 36. Yet if it be found that, in fact, a debt is hers, although contracted in the name of her husband, she will be held liable for it: Voskamp v. Conner, 173 Pa. 109.

It is evident from all the authorities that, within the scope of their statutory powers, married women are on an equality with their husbands and with unmarried persons, and may bind themselves in the same manner and to the same extent. Therefore it must be held that married women, in the prosecution of their statutory privileges, may charge themselves with duties arising out of moral obligations. A moral obligation is a duty subsisting in conscience, natural justice and morality, but not enforceable at law, and it may become the basis of a legal obligation through an express agreement; the moral obligation being a sufficient consideration to support the agreement: Hemphill v. McClimans, 24 Pa. 367; Bailey v. Philadelphia, 167 Pa. 569. Upon this principle, while a loan to a member of a copartnership, of money which is afterward used in the firm business, remains the debt of the borrowing partner, yet

if the firm assume the debt, the moral obligation, arising from the use of the money by the firm, is sufficient to sustain a judgment based on such assumption, even against the general creditors of the firm : Siegel v. Chidsey, 28 Pa. 279 ; Walker v. Bank, 98 Pa. 574 ; Larzelere v. Tooley, 3 Pa. Superior Ct. 109.

This principle has also been extended to the obligations of married women, since the passage of the married persons property act of 1887. In Brooks v. Merchants Nat. Bank, 125 Pa. 394, the notes of a firm of which a married woman was a member, given after the passage of that statute, in renewal of notes given prior to its passage, were held to be valid, the Supreme Court saying : " The moral obligation to pay the notes given during coverture was a sufficient consideration for the renewal notes given since the passage of the act of 1887." And in Spott's Estate, supra, a husband who borrowed $1,000, which was used in his wife's business, was permitted to recover it from her estate, upon proof of her declarations that she had received the money and used it in her business, and that she intended to pay off the judgment which her husband had given for the loan. There was no evidence of an express contract on her part, the substantive ground of liability being the use of the money in her separate business. Having received the money she was morally bound to repay it, and though the debt was that of her husband, her subsequent express promise to pay it was binding upon her.

In the case before us, the note of the appellant was in effect given for an article used in and about the management of her separate estate, and was bought for that purpose from the plaintiff's testator. So far as the evidence shows she was the sole beneficiary of the transaction. The fact that her husband may have managed the farm cannot, in itself, affect her rights and liabilities respecting it ; in the light of the circumstances and of her promise he was presumably acting under her direction. Her note therefore was given in payment of a debt which she might legally have contracted, and under the authorities cited, it was based on a sufficient consideration.

Coming now to the other questions involved in the decision of the case, it is necessary to consider the provisions of the act of June 28, 1879, above referred to. The first section provides " That every package of commercial fertilizer sold, offered, or exposed, for sale, for manurial purposes, within this common-

wealth, shall have plainly stamped thereon the name of the manufacturer, the place of manufacture, the net weight of its contents, and an analysis stating the percentage therein contained of nitrogen, or its equivalent in ammonia in an available form, of potash soluble in water, or soluble and reverted phosphoric acid, and of insoluble phosphoric acid." The second section, while, in some respects not as clearly worded as it might be, provides in substance that every manufacturer or importer of commercial fertilizers shall file annually, in the office of the secretary of the commonwealth, an affidavit stating the amount of fertilizer or fertilizers sold within the state during the last preceding year, together with a copy of the analysis required by the first section of the act and shall thereupon, after the payment of a certain license fee, calculated according to the amount of the sales, be entitled to a certificate showing that the provisions of the act have been complied with. By the third section, it is provided that any one selling, offering or exposing for sale any commercial fertilizer, such as falls within the operation of the law, without the analysis required by the first section, or with an analysis stating that it contains more of the constituents above named than is actually contained therein, or for the sale of which "all the provisions of section two have not been complied with," shall be guilty of a misdemeanor and forfeit a sum of money, one half to go to the informer. It is not necessary for the purpose of this case to refer to the other provisions of the act.

It will be observed that there is nothing in the act expressly prohibiting the sale of fertilizers contained in packages improperly stamped. Whatever may have been the trend or effect of the earlier decisions in Pennsylvania, the case of Rahter v. First Nat. Bank of Lancaster, 92 Pa. 393, seems to fully establish the rule, that where goods offered for sale are required, by statute, on pain of a forfeiture or penalty, to be marked or branded in a certain way, the price thereof may be recovered, unless there is also an express prohibition as to the sale.

As the certificate of the secretary of the commonwealth it is only obtainable at the end of each year and relates to the sales for that year, it cannot, therefore, be deemed a prerequisite or condition precedent to doing business.

There is nothing in the case requiring further discussion.

Judgment affirmed.